**Clifford A. Katz**
**PLATZER, SWERGOLD,**
**GOLDBERG, KATZ & JASLOW, LLP**
475 Park Avenue South, 18th Floor
New York, New York 10016
Tel.  (212) 593-3000
Fax.  (212) 593-0353
Email: ckatz@platzerlaw.com

*Attorneys for Canon Financial Services, Inc.*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CANON FINANCIAL SERVICES, INC. as assignee of CANON MEDICAL SYSTEMS USA, INC., | Case No.: _____ |
| *Plaintiff,* | **COMPLAINT** |
| -against- | |
| AMBULATORY SURGERY CENTERS, LLC, KISHLAY ANAND, DAAN INVESTMENT SERVICES LLLP, ARIZONA SURGERY PARTNERS, LLC, DESERT MIRAGE SURGERY CENTER, LLC, ARIZONA SURGICAL PARTNERS LLC, and ARIZONA IMAGING CENTER, LLC d/b/a APRICUS IMAGING CENTER, | |
| *Defendants.* | |

Plaintiff, Canon Financial Services, Inc. as assignee of Canon Medical Systems USA, Inc.

("Canon", "Lessor" or "Plaintiff"), brings this action against defendants, Ambulatory Surgery

Centers, LLC ("Ambulatory"), Kishlay Anand ("Anand"), DAAN Investment Services LLLP

("DAAN"), Arizona Surgery Partners, LLC ("Arizona Surgery"), Desert Mirage Surgery Center,

LLC ("Desert"), Arizona Surgical Partners LLC ("Arizona Surgical"), and Arizona Imaging

Center, LLC d/b/a Apricus Imaging Center ("Apricus") (Ambulatory, Anand, DAAN, Arizona

Surgery, Desert, Arizona Surgical, and Apricus are hereinafter collectively referred to as the "Defendants").  Canon alleges upon personal knowledge as to its own acts and observations and otherwise upon information and belief as follows:

## INTRODUCTION

1.      On or about April 29, 2021, Canon Medical Systems USA, Inc. ("Canon Medical") entered into a certain Master Lease Agreement with schedules (hereinafter the "Ambulatory Master Lease"), by which Canon Medical leased certain medical equipment to Ambulatory.

2.      On or about September 16, 2021, Canon Medical entered into a certain Master Lease Agreement with schedules (hereinafter the "Desert Master Lease") by which Canon Medical leased certain medical equipment to Desert.

3.      On or about October 14, 2020 Canon Medical entered into a certain Master Lease Agreement with schedules (hereinafter the "Apricus Master Lease") (Ambulatory Master Lease, Desert Master Lease, and Apricus Master Lease are hereinafter collectively referred to as the "Master Lease Agreements") by which Canon Medical leased certain medical equipment to Apricus.

4.      Pursuant to a written guarantee, dated April 23, 2021, the Ambulatory Master Lease was guaranteed by Anand, DAAN, and Arizona Surgery (collectively the "Ambulatory Guarantors").

5.      Pursuant to a written guarantee, dated September 13, 2021, the Desert Master Lease was guaranteed by Anand and Arizona Surgical (collectively the "Desert Guarantors").

6.      Pursuant to a written guarantee, dated October 5, 2020, the Apricus Master Lease was guaranteed by Anand (the "Apricus Guarantor").

7.      On or about March 2022, Ambulatory, Desert, and Apricus defaulted on all the

lease agreements, and Canon seeks from the defendants the remaining balances due, totaling in excess of $11,000,000.00, exclusive of applicable interest, fees, and costs, as well as to foreclose its security interest and obtain possession of all the medical equipment leased in accordance with the Ambulatory Master Lease, the Desert Master Lease, and the Apricus Master Lease.

8.      Pursuant to written assignment agreements dated February 21, 2023, Canon Medical Finance USA, a program of Canon Medical assigned all of its rights, title, and interest in and to the Ambulatory Master Lease, the Desert Master Lease, the Apricus Master Lease, and the respective Schedules, corporate and individual guarantees, equipment covered thereby, and any and all related documents to Canon.

## PARTIES

9.      Canon is, and at all times hereinafter mentioned was, a corporation, organized and existing under the laws of the State of New Jersey, having a principal place of business in New Jersey.  Canon is a wholly owned subsidiary of Canon U.S.A., Inc. ("Canon U.S.A."), a corporation, organized and existing under the laws of the State of New York, having a principal place of business in New York.  Canon has an office located in Melville, New York.

10.     Upon information and belief, Ambulatory is a limited liability company, organized and existing under the laws of the State of Arizona, having a principal place of business at 16435 North Scottsdale Road, Suite 400, Scottsdale, Arizona 85254 and/or 10825 West McDowell Road, Avondale, Arizona 85392. Upon information and belief, Arizona Surgery is a manager and the only member of Ambulatory.

11.     Upon information and belief, Anand is a resident of the state of Arizona, residing and domiciled at 6223 East Via Estrella Avenue, Paradise Valley, Arizona 85253 and/or 20565 North 19th Avenue, Suite 300, Phoenix, Arizona 85027.

12.    Upon information and belief, DAAN is a limited liability limited partnership organized and existing under the laws of the state of Arizona, and having an address at 6223 East Via Estrella Avenue, Paradise Valley, Arizona 85253.  Upon information and belief, the only listed partner of DAAN is Yojna Management Services Corporation ("Yojna").  Yojna is, upon information and belief, a corporation, organized and existing under the laws of the State of Arizona, having a place of business at 6223 East Via Estrella Avenue, Paradise Valley, Arizona 85253 and/or 10905 North Camino De Oeste, Tucson, Arizona 85742.  Upon information and belief, Anand is the president, secretary, and a director of Yojna.

13.    Upon information and belief, Arizona Surgery is a limited liability company, organized and existing under the laws of the State of Arizona, having a principal place of business at 20565 North 19th Avenue, Suite 300, Phoenix, Arizona 85027.  Upon information and belief, Anand is a manager of Arizona Surgery.  Upon information and belief, Nivesh LLC ("Nivesh") is a member of Arizona Surgery.  Nivesh is, upon information and belief, a limited liability company, organized and existing under the laws of the State of Arizona, having a place of business at 6223 East Via Estrella Avenue, Paradise Valley, Arizona 85253.  Upon information and belief, Anand is a manager of Nivesh, and DAAN is a manager and member of Nivesh.

14.    Upon information and belief, Arizona Surgical is a limited liability company, organized and existing under the laws of the State of Arizona, having a principal place of business at 16435 North Scottsdale Road, Suite 400, Scottsdale, Arizona 85254.  Upon information and belief, DAAN is a manager and the only member of Arizona Surgical.

15.    Upon information and belief, Desert is a limited liability company, organized and existing under the laws of the State of Arizona, having a principal place of business at 16435 North Scottsdale Road, Suite 400, Scottsdale, Arizona 85254.  Upon information and belief, Arizona

Surgery is a manager and the only member of Desert.

16.     Upon information and belief, Apricus is a limited liability company, organized and existing under the laws of the State of Arizona, having a principal place of business at 20565 North 19th Avenue, Suite 300, Phoenix, Arizona 85027.   Upon information and belief, Anand is a manager of Apricus.   Upon information and belief, Arizona Imaging Partners, LLC ("Imaging") is the only member of Apricus.   Imaging is, upon belief and information, a limited liability company, organized and existing under the laws of the State of Arizona, having a principal place of business at 20565 North 19th Avenue, Suite 300, Phoenix, Arizona 85027.   Upon information and belief, Anand is a manager of Imaging, and DAAN is the only member of Imaging.

## JURISDICTION AND VENUE

17.     This Court has jurisdiction over this action pursuant to 28 U.S.C § 1332 based upon the diversity of citizenship of the parties and because the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

18.     Venue is proper in this District since pursuant to the Master Lease Agreements, Ambulatory, Desert, and Apricus all consented to the jurisdiction of any court located in New York.   As guarantors, Anand, DAAN, Arizona Surgery, and Arizona Surgical each irrevocably submitted itself to jurisdiction in the United States District Court for the State of New York with respect to any matter, suit, or proceeding arising out of their respective guaranties or the transactions contemplated thereby.

## FACTUAL BACKGROUND

19.     This action ("Action") is brought to recover all sums due and owing by: (i) Ambulatory to Canon as a result of its default in the Ambulatory Master Lease and against the Ambulatory Guarantors arising from their breach of their executed guaranties; (ii) Desert to Canon

as a result of its default in the Desert Master Lease and against the Desert Guarantors arising from their breach of their executed guaranties; and (iii) Apricus to Canon as a result of its default in the Apricus Master Lease and against the Apricus Guarantor arising from his breach of his executed guaranty.

**The Ambulatory Master Lease**

20.     On or about April 29, 2021, Ambulatory entered into the Ambulatory Master Lease with Canon Medical along with certain schedules subsequent thereto as references below. A copy of the Ambulatory Master Lease and related documents are annexed hereto and incorporated herein as Exhibits "A" though Exhibit "I".

21.     Paragraph numbered "1" of the Ambulatory Master Lease provides, in pertinent part:

> Each time [Ambulatory] want[s] to lease equipment from [Plaintiff], the parties will sign a separate schedule which will incorporate the terms and conditions of this [Ambulatory Master Lease] ("Schedule").

22.     Pursuant to Paragraph numbered "2" of the Ambulatory Master Lease, Ambulatory agreed to sign and forward a certain Delivery and Acceptance Certificate ("D&A") for each schedule agreement, establishing unconditional and irrevocable acceptance of the equipment set out in that schedule agreement as well as agreement to pay Plaintiff all lease payments listed in that schedule agreement.

23.     Paragraph numbered "2" of the Ambulatory Master Lease further provides, in pertinent part:

> The term of each Schedule will begin, unless [Plaintiff] otherwise agree[s] in writing, on the day which [Ambulatory] sign[s] the D&A ("Commencement Date").  The remaining lease payments will be due on the day of each subsequent month (or such other time period specified in the Schedule) … [Ambulatory] agree[s] to make all payments required under each Schedule timely … If any payment due [Plaintiff] is not paid within 10 days of its due date, [Ambulatory] will pay [Plaintiff] a late charge

equal to the greater of (i) 1.5% of each late payment or (ii) $5.00 for each late payment (or such lesser sum which is the maximum amount allowable under applicable law).

24.     Paragraph numbered "9" of the Ambulatory Master Lease provides, in pertinent part:

[Ambulatory] agree[s] that [Plaintiff] ha[s] a first priority perfected security interest in the [equipment leased].  To secure payment of all amounts due to [Plaintiff] under each Schedule and all other agreements [Ambulatory] ha[s] with [Plaintiff], to the extent permitted by law, [Ambulatory] grant[s] [Plaintiff] and [Plaintiff's] assigns a purchase money security interest in the [equipment].

25.     Pursuant to Paragraph numbered "10" of the Ambulatory Master Lease, a Default occurs when, *inter alia*, Ambulatory fails to make any payment due and owing under the applicable schedule agreement within ten (10) days of its due date.

26.     Paragraph numbered "11" of the Ambulatory Master Lease provides, in pertinent part:

If a Default occurs, [Plaintiff] may do one or more of the following under any or all Schedules or agreements [Plaintiff] ha[s] with [Ambulatory]: (a) [Plaintiff] may cancel or terminate this Agreement or any or all other Schedules that [Plaintiff] ha[s] entered into with [Ambulatory] and/or withdraw any offer of credit; (b) [Plaintiff] may demand that [Ambulatory] pays [Plaintiff] all amounts then due and/or to become due under any Schedule … (c) [Plaintiff] may require [Ambulatory] to deliver the [equipment] to [Plaintiff] as set forth in this Agreement; (d) [Plaintiff] may peacefully repossess the [equipment] without court order and [Ambulatory] will not make any claims against [Plaintiff] for damages or trespass or any other reason; (e) [Plaintiff] may exercise any other right or remedy available at law or in equity; and (f) charge [Ambulatory] interest on all monies due at the rate of eighteen percent (18%) per annum from the date of default until paid … [Ambulatory] agree[s] to pay all costs incurred by [Plaintiff] in connection with enforcing [Plaintiff's] rights against [Ambulatory], including attorneys' fees.

27.     Paragraph numbered "15" of the Ambulatory Master Lease provides, in pertinent part:

This Agreement and all Schedules will be governed by the laws of the State

of New York.  [Ambulatory] consent[s] to the jurisdiction of any court located in New York.

28.     Ambulatory executed Lease Schedule Number "01" to the Ambulatory Master Lease, dated April 23, 2021 ("Ambulatory Schedule 01"), whereby Ambulatory leased certain equipment from Canon Medical and agreed to remit to Plaintiff seventy-eight (78) monthly payments of $4,132.14 plus applicable taxes. Ambulatory Schedule 01 is attached hereto and incorporated herein, as Exhibit "B".

29.     Ambulatory executed Lease Schedule Number "02" to the Ambulatory Master Lease, dated April 23, 2021 ("Ambulatory Schedule 02"), whereby Ambulatory leased certain equipment from Canon Medical and agreed to remit to Plaintiff eighty-four (84) monthly payments of $44,438.59 plus applicable taxes. Ambulatory Schedule 02 is attached hereto and incorporated herein, as Exhibit "C".

30.     Ambulatory executed Lease Schedule Number "04" to the Ambulatory Master Lease, dated July 20, 2021 ("Ambulatory Schedule 04"), whereby Ambulatory leased certain equipment from Plaintiff and agreed to remit to Plaintiff sixty-six (66) monthly payments of $5,699.68 plus applicable taxes. Ambulatory Schedule 04 is attached hereto and incorporated herein, as Exhibit "D".

31.     Ambulatory executed Lease Schedule Number "05" to the Ambulatory Master Lease, dated July 21, 2021 ("Ambulatory Schedule 05"), whereby Ambulatory leased certain equipment from Plaintiff and agreed to remit to Plaintiff fifty-four (54) monthly payments of $4,051.45 plus applicable taxes. Ambulatory Schedule 05 is attached hereto and incorporated herein, as Exhibit "E".

32.     Ambulatory executed Lease Schedule Number "06" to the Ambulatory Master Lease, dated July 21, 2021 ("Ambulatory Schedule 06"), whereby Ambulatory leased certain

equipment from Plaintiff and agreed to remit to Plaintiff fifty-four (54) monthly payments of $4,051.45 plus applicable taxes. Ambulatory Schedule 06 is attached hereto and incorporated herein, as Exhibit "F".

33.     Ambulatory executed Lease Schedule Number "08" to the Ambulatory Master Lease dated July 26, 2021 ("Ambulatory Schedule 08"), whereby Ambulatory leased certain equipment from Plaintiff and agreed to remit to Plaintiff fifty-four (54) monthly payments of $19,558.27 plus applicable taxes. Ambulatory Schedule 08 is attached hereto and incorporated herein, as Exhibit "G".

34.     Ambulatory executed Lease Schedule Number "09" to the Ambulatory Master Lease, dated August 11, 2021 ("Ambulatory Schedule 09"), whereby Ambulatory leased certain equipment from Plaintiff and agreed to remit to Plaintiff fifty-four (54) monthly payments of $2,809.43 plus applicable taxes. Ambulatory Schedule 09 is attached hereto and incorporated herein, as Exhibit "H".

35.     Ambulatory executed Lease Schedule Number "10" to the Ambulatory Master Lease dated October 27, 2021 ("Ambulatory Schedule 10"; and together with Ambulatory Schedule 01, Ambulatory Schedule 02, Ambulatory Schedule 04, Ambulatory Schedule 05, Ambulatory Schedule 06, Ambulatory Schedule 08, and Ambulatory Schedule 09, collectively the "Ambulatory Schedules"), whereby Ambulatory leased certain equipment from Plaintiff and agreed to remit to Plaintiff sixty-six (66) monthly payments of $424.18 plus applicable taxes. Ambulatory Schedule 10 is attached hereto and incorporated herein, as Exhibit "I".

**The Ambulatory Guaranties**

36.     In conjunction with and in order to induce Canon Medical to enter into the Ambulatory Master Lease and any and all schedule agreements attached thereto, Anand executed

a blanket guaranty (the "<u>Ambulatory Anand Guaranty</u>"), DAAN executed a blanket guaranty (the "<u>Ambulatory DAAN Guaranty</u>"), and Arizona Surgery executed a blanket guaranty (the "<u>Ambulatory Arizona Guaranty</u>") (the Ambulatory Anand Guaranty, Ambulatory DAAN Guaranty, and Ambulatory Arizona Guaranty are hereinafter collectively referred to as the "<u>Ambulatory Guaranties</u>"), each guaranteeing to Plaintiff, unconditionally: (i) the due and punctual payment to Plaintiff when due of all amounts coming due under the Ambulatory Master Lease and the Ambulatory Schedules, (ii) the full, prompt, and unconditional performance of every obligation to be performed by Ambulatory under the Ambulatory Master Lease and the Ambulatory Schedules, and (iii) all expenses of obtaining or endeavoring to obtain payment or performance thereof or security therefore, or of enforcing the respective guaranty, including attorneys' fees and other legal expenses. The Ambulatory Guaranties are annexed hereto and incorporated herein in Exhibit "A".

37. Anand, pursuant to Paragraph numbered "8.3" of the Ambulatory Anand Guaranty, agreed that his personal guaranty shall be governed by and construed in accordance with the laws of the State of New York.

38. DAAN, pursuant to Paragraph numbered "8.2" of the Ambulatory DAAN Guaranty, agreed to irrevocably submit itself to jurisdiction in the Courts of New York and to jurisdiction in the United States District Court for the state of New York with respect to any matter, suit, or proceeding arising out of its guaranty or the transactions contemplated hereby.

39. Arizona Surgery, pursuant to Paragraph numbered "8.2" of the Ambulatory Arizona Guaranty, agreed to irrevocably submit itself to jurisdiction in the Courts of New York and to jurisdiction in the United States District Court for the state of New York with respect to any matter, suit, or proceeding arising out of its guaranty or the transactions contemplated hereby.

**The Desert Leases**

40.     On or about September 14, 2021, Desert entered into the Desert Master Lease with Canon Medical. A copy of the Desert Master Lease is annexed hereto and incorporated herein as Exhibit "J".

41.     Paragraph numbered "1" of the Desert Master Lease provides, in pertinent part:

> Each time [Desert] want[s] to lease equipment from [Plaintiff], the parties will sign a separate schedule which will incorporate the terms and conditions of this [Desert Master Lease] ("Schedule").

42.     Pursuant to Paragraph numbered "2" of the Desert Master Lease, Desert agreed to sign and forward a certain D&A for each schedule agreement, establishing unconditional and irrevocable acceptance of the equipment set out in that schedule agreement as well as agreement to pay Plaintiff all lease payments listed in that schedule agreement.

43.     Paragraph numbered "2" of the Desert Master Lease further provides, in pertinent part:

> The term of each Schedule will begin, unless [Plaintiff] otherwise agree[s] in writing, on the day which [Desert] sign[s] the D&A ("Commencement Date").  The remaining lease payments will be due on the day of each subsequent month (or such other time period specified in the Schedule) … [Desert] agree[s] to make all payments required under each Schedule timely … If any payment due [Plaintiff] is not paid within 10 days of its due date, [Desert] will pay [Plaintiff] a late charge equal to the greater of (i) 1.5% of each late payment or (ii) $5.00 for each late payment (or such lesser sum which is the maximum amount allowable under applicable law).

44.     Paragraph numbered "9" of the Desert Master Lease provides, in pertinent part:

> [Desert] agree[s] that [Plaintiff] ha[s] a first priority perfected security interest in the [equipment leased].  To secure payment of all amounts due to [Plaintiff] under each Schedule and all other agreements [Desert] ha[s] with [Plaintiff], to the extent permitted by law, [Desert] grant[s] [Plaintiff] and [Plaintiff's] assigns a purchase money security interest in the [equipment]

45.     Pursuant to Paragraph numbered "10" of the Desert Master Lease, a Default occurs

when, *inter alia*, Desert fails to make any payment due and owing under the applicable schedule agreement within ten (10) days of its due date.

46.     Paragraph numbered "11" of the Desert Master Lease provides, in pertinent part:

> If a Default occurs, [Plaintiff] may do one or more of the following under any or all Schedules or agreements [Plaintiff] ha[s] with [Desert]: (a) [Plaintiff] may cancel or terminate this Agreement or any or all other Schedules that [Plaintiff] ha[s] entered into with [Desert] and/or withdraw any offer of credit; (b) [Plaintiff] may demand that [Desert] pays [Plaintiff] all amounts then due and/or to become due under any Schedule … (c) [Plaintiff] may require [Desert] to deliver the [equipment] to [Plaintiff] as set forth in this Agreement; (d) [Plaintiff] may peacefully repossess the [equipment] without court order and [Desert] will not make any claims against [Plaintiff] for damages or trespass or any other reason; (e) [Plaintiff] may exercise any other right or remedy available at law or in equity; and (f) charge [Desert] interest on all monies due at the rate of eighteen percent (18%) per annum from the date of default until paid … [Desert] agree[s] to pay all costs incurred by [Plaintiff] in connection with enforcing [Plaintiff's] rights against [Desert], including attorneys' fees.

47.     Paragraph numbered "15" of the Desert Master Lease provides, in pertinent part:

> This Agreement and all Schedules will be governed by the laws of the State of New York.  [Desert] consent[s] to the jurisdiction of any court located in New York.

48.     Desert executed Lease Schedule Number "01" to the Desert Master Lease dated September 13, 2021 ("Desert Schedule 01"), whereby Desert leased certain equipment from Plaintiff and agreed to remit to Plaintiff seventy-eight (78) monthly payments of $1,170.12 plus applicable taxes. Desert Schedule 01 is attached hereto and incorporated herein, as Exhibit "K".

49.     Desert executed Lease Schedule Number "03" to the Desert Master Lease dated September 13, 2021 ("Desert Schedule 03"), whereby Desert leased certain equipment from Plaintiff and agreed to remit to Plaintiff seventy-eight (78) monthly payments of $333.63 plus applicable taxes. Desert Schedule 02 is attached hereto and incorporated herein, as Exhibit "L".

50.     Desert executed Lease Schedule Number "04" to the Desert Master Lease dated September 13, 2021 ("Desert Schedule 04"), whereby Desert leased certain equipment from

Plaintiff and agreed to remit to Plaintiff eighty-four (84) monthly payments of $19,189.83 plus applicable taxes. Desert Schedule 04 is attached hereto and incorporated herein, as Exhibit "M".

51.     Desert executed Lease Schedule Number "05" to the Desert Master Lease dated September 20, 2021 ("Desert Schedule 05"), whereby Desert leased certain equipment from Plaintiff and agreed to remit to Plaintiff six (6) monthly payments of $356.00 followed by seventy-two (72) monthly payments of $1,175.79 plus applicable taxes. Desert Schedule 05 is attached hereto and incorporated herein, as Exhibit "N".

52.     Desert executed Lease Schedule Number "06" to the Desert Master Lease dated September 23, 2021 ("Desert Schedule 06"), whereby Desert leased certain equipment from Plaintiff and agreed to remit to Plaintiff eighty-four (84) monthly payments of $4,223.95 plus applicable taxes. Desert Schedule 06 is attached hereto and incorporated herein, as Exhibit "O".

53.     Desert executed Lease Schedule Number "07" to the Desert Master Lease dated October 4, 2021 ("Desert Schedule 07"), whereby Desert leased certain equipment from Plaintiff and agreed to remit to Plaintiff sixty (60) monthly payments of $1,149.20 plus applicable taxes. Desert Schedule 07 is attached hereto and incorporated herein, as Exhibit "P".

54.     Desert executed Lease Schedule Number "08" to the Desert Master Lease dated July 23, 2021 ("Desert Schedule 08"; and together with Desert Schedule 01, Desert Schedule 03, Desert Schedule 04, Desert Schedule 05, Desert Schedule 06, and Desert Schedule 07, collectively the "Desert Schedules"), whereby Desert leased certain equipment from Plaintiff and agreed to remit to Plaintiff six (6) monthly payments of $50.00 followed by fifty-four (54) monthly payments of $2,473.83 plus applicable taxes. Desert Schedule 08 is attached hereto and incorporated herein, as Exhibit "Q".

**The Desert Guaranties**

55.     In conjunction with and in order to induce Canon Medical to enter into the Desert Master Lease and any and all schedules attached thereto, Anand executed a blanket guaranty (the "Desert Anand Guaranty") and Arizona Surgical executed a blanket guaranty (the "Desert Surgical Guaranty") (the Desert Anand Guaranty and Desert Surgical Guaranty are hereinafter collectively referred to as the "Desert Guaranties"), each guaranteeing to Canon Medical, unconditionally: (i) the due and punctual payment to Plaintiff when due of all amounts coming due under the Desert Master Lease and the Desert Schedules, (ii) the full, prompt, and unconditional performance of every obligation to be performed by Desert under the Desert Master Lease and the Desert Schedules, and (iii) all expenses of obtaining or endeavoring to obtain payment or performance thereof or security therefore, or of enforcing the respective guaranty, including attorneys' fees and other legal expenses. Copies of the Desert Guaranties are annexed hereto and incorporated as part of Exhibit "J".

56.     Anand, pursuant to Paragraph numbered "8.3" of the Desert Anand Guaranty, agreed that his personal guaranty shall be governed by and construed in accordance with the laws of the State of New York.

57.     Arizona Surgical, pursuant to Paragraph numbered "8.2" of the Desert Surgical Guaranty, agreed to irrevocably submit itself to jurisdiction in the Courts of New York and to jurisdiction in the United States District Court for the state of New York with respect to any matter, suit, or proceeding arising out of its guaranty or the transactions contemplated hereby.

**The Apricus Leases**

58.     On or about October 14, 2020, Apricus executed the Apricus Master Lease. A copy of the Apricus Master Lease is annexed hereto and incorporated herein as Exhibit "R".

59.     Paragraph numbered "1" of the Apricus Master Lease provides, in pertinent part:

> Each time [Apricus] want[s] to lease equipment from [Plaintiff], the parties will sign a separate schedule which will incorporate the terms and conditions of this [Apricus Master Lease] ("Schedule").

60.     Pursuant to Paragraph numbered "2" of the Apricus Master Lease, Apricus agreed to sign and forward a certain D&A for each schedule agreement, establishing unconditional and irrevocable acceptance of the equipment set out in that schedule agreement as well as agreement to pay Plaintiff all lease payments listed in that schedule agreement.

61.     Paragraph numbered "2" of the Apricus Master Lease further provides, in pertinent part:

> The term of each Schedule will begin, unless [Plaintiff] otherwise agree[s] in writing, on the day which [Apricus] sign[s] the D&A ("Commencement Date").  The remaining lease payments will be due on the day of each subsequent month (or such other time period specified in the Schedule) … [Apricus] agree[s] to make all payments required under each Schedule timely … If any payment due [Plaintiff] is not paid within 10 days of its due date, [Apricus] will pay [Plaintiff] a late charge equal to the greater of (i) 1.5% of each late payment or (ii) $5.00 for each late payment (or such lesser sum which is the maximum amount allowable under applicable law).

62.     Paragraph numbered "9" of the Apricus Master Lease provides, in pertinent part:

> [Apricus] agree[s] that [Plaintiff] ha[s] a first priority perfected security interest in the [equipment leased].  To secure payment of all amounts due to [Plaintiff] under each Schedule and all other agreements [Apricus] ha[s] with [Plaintiff], to the extent permitted by law, [Apricus] grant[s] [Plaintiff] and [Plaintiff's] assigns a purchase money security interest in the [equipment].

63.     Pursuant to Paragraph numbered "10" of the Apricus Master Lease, a Default occurs when, *inter alia*, Apricus fails to make any payment due and owing under the applicable schedule agreement within ten (10) days of its due date.

64.     Paragraph numbered "11" of the Apricus Master Lease provides, in pertinent part:

> If a Default occurs, [Plaintiff] may do one or more of the following under any or all Schedules or agreements [Plaintiff] ha[s] with [Apricus]: (a)

15

[Plaintiff] may cancel or terminate this Agreement or any or all other Schedules that [Plaintiff] ha[s] entered into with [Apricus] and/or withdraw any offer of credit; (b) [Plaintiff] may demand that [Apricus] pays [Plaintiff] all amounts then due and/or to become due under any Schedule … (c) [Plaintiff] may require [Apricus] to deliver the [equipment] to [Plaintiff] as set forth in this Agreement; (d) [Plaintiff] may peacefully repossess the [equipment] without court order and [Apricus] will not make any claims against [Plaintiff] for damages or trespass or any other reason; (e) [Plaintiff] may exercise any other right or remedy available at law or in equity; and (f) charge [Apricus] interest on all monies due at the rate of eighteen percent (18%) per annum from the date of default until paid … [Apricus] agree[s] to pay all costs incurred by [Plaintiff] in connection with enforcing [Plaintiff's] rights against [Apricus], including attorneys' fees.

65.    Paragraph numbered "15" of the Apricus Master Lease provides, in pertinent part:

This Agreement and all Schedules will be governed by the laws of the State of New York.  [Apricus] consent[s] to the jurisdiction of any court located in New York.

66.    Apricus executed Lease Schedule Number "01" to the Apricus Master Lease dated October 5, 2020 ("Apricus Schedule 01"), whereby Apricus leased certain equipment from Plaintiff and agreed to remit to Plaintiff seventy-two (72) monthly payments of $14,349.57 plus applicable taxes. A copy of the Apricus Schedule 01 is annexed hereto and incorporated herein as Exhibit "S".

67.    Apricus executed Lease Schedule Number "02" to the Apricus Master Lease dated October 5, 2020 ("Apricus Schedule 02"), whereby Apricus leased certain equipment from Plaintiff and agreed to remit to Plaintiff seventy-two (72) monthly payments of $835.08 plus applicable taxes. A copy of the Apricus Schedule 02 is annexed hereto and incorporated herein as Exhibit "T".

68.    Apricus executed Lease Schedule Number "03" to the Apricus Master Lease dated October 5, 2020 ("Apricus Schedule 03"), whereby Apricus leased certain equipment from Plaintiff and agreed to remit to Plaintiff seventy-two (72) monthly payments of $1,592.50 plus applicable taxes. A copy of the Apricus Schedule 03 is annexed hereto and incorporated herein as

Exhibit "U".

69.     Apricus executed Lease Schedule Number "04" to the Apricus Master Lease dated October 5, 2020 ("Apricus Schedule 04"), whereby Apricus leased certain equipment from Plaintiff and agreed to remit to Plaintiff seventy-two (72) monthly payments of $15,683.73 plus applicable taxes. A copy of the Apricus Schedule 04 is annexed hereto and incorporated herein as Exhibit "V".

70.     Apricus executed Lease Schedule Number "05" to the Apricus Master Lease dated October 5, 2020 ("Apricus Schedule 05"), whereby Apricus leased certain equipment from Plaintiff and agreed to remit to Plaintiff seventy-two (72) monthly payments of $611.26 plus applicable taxes. A copy of the Apricus Schedule 05 is annexed hereto and incorporated herein as Exhibit "W".

71.     Apricus executed Lease Schedule Number "06" to the Apricus Master Lease dated October 5, 2020 ("Apricus Schedule 06"), whereby Apricus leased certain equipment from Plaintiff and agreed to remit to Plaintiff seventy-two (72) monthly payments of $4,708.00 plus applicable taxes. A copy of the Apricus Schedule 06 is annexed hereto and incorporated herein as Exhibit "X".

72.     Apricus executed Lease Schedule Number "07" to the Apricus Master Lease dated October 15, 2020 ("Apricus Schedule 07"), whereby Apricus leased certain equipment from Plaintiff and agreed to remit to Plaintiff seventy-two (72) monthly payments of $19,253.37 plus applicable taxes. A copy of the Apricus Schedule 07 is annexed hereto and incorporated herein as Exhibit "Y".

73.     Apricus executed Lease Schedule Number "08" to the Apricus Master Lease dated November 10, 2020 ("Apricus Schedule 08"), whereby Apricus leased certain equipment from

Plaintiff and agreed to remit to Plaintiff seventy-two (72) monthly payments of $1,517.50 plus applicable taxes. A copy of the Apricus Schedule 08 is annexed hereto and incorporated herein as Exhibit "Z".

74.     Apricus executed Lease Schedule Number "09" to the Apricus Master Lease dated June 29, 2021 ("Apricus Schedule 09"), whereby Apricus leased certain equipment from Plaintiff and agreed to remit to Plaintiff eighty-one (81) monthly payments of $367.73 plus applicable taxes. A copy of the Apricus Schedule 09 is annexed hereto and incorporated herein as Exhibit "AA".

75.     Apricus executed Lease Schedule Number "10" to the Apricus Master Lease dated July 20, 2021 ("Apricus Schedule 10"), whereby Apricus leased certain equipment from Plaintiff and agreed to remit to Plaintiff fifty-seven (57) monthly payments of $961.08 plus applicable taxes. A copy of the Apricus Schedule 10 is annexed hereto and incorporated herein as Exhibit "BB".

76.     Apricus executed Lease Schedule Number "12" to the Apricus Master Lease July 27, 2021 ("Apricus Schedule 12"), whereby Apricus leased certain equipment from Plaintiff and agreed to remit to Plaintiff fifty-four (54) monthly payments of $1,121.65 plus applicable taxes. A copy of the Apricus Schedule 12 is annexed hereto and incorporated herein as Exhibit "CC".

77.     Apricus executed Lease Schedule Number "13" to the Apricus Master Lease dated August 11, 2021 ("Apricus Schedule 13"), whereby Apricus leased certain equipment from Plaintiff and agreed to remit to Plaintiff eighty-four (84) monthly payments of $1,856.29 plus applicable taxes. A copy of the Apricus Schedule 13 is annexed hereto and incorporated herein as Exhibit "DD".

78.     Apricus executed Lease Schedule Number "14" to the Apricus Master Lease dated November 9, 2021 ("Apricus Schedule 14"; and together with Apricus Schedule 01, Apricus

Schedule 02, Apricus Schedule 03, Apricus Schedule 04, Apricus Schedule 05, Apricus Schedule 06, Apricus Schedule 07, Apricus Schedule 08, Apricus Schedule 09, Apricus Schedule 10, Apricus Schedule 12, and Apricus Schedule 13, collectively the "Apricus Schedules"), whereby Apricus leased certain equipment from Plaintiff and agreed to remit to Plaintiff seventy-two (72) monthly payments of $630.58 plus applicable taxes. A copy of the Apricus Schedule 14 is annexed hereto and incorporated herein as Exhibit "EE".

**The Apricus Guaranty**

79.     In conjunction with and in order to induce Canon Medical to enter into the Apricus Master Lease and any and all schedule agreements attached thereto, Anand executed a blanket guaranty (the "Apricus Anand Guaranty" or "Apricus Guaranty"), guaranteeing to Plaintiff, unconditionally: (i) the due and punctual payment to Plaintiff when due of all amounts coming due under the Apricus Master Lease and the Apricus Schedules, (ii) the full, prompt, and unconditional performance of every obligation to be performed by Apricus under the Apricus Master Lease the Apricus Schedules, and (iii) all expenses of obtaining or endeavoring to obtain payment or performance thereof or security therefore, or of enforcing the respective guaranty, including attorneys' fees and other legal expenses. A copy of the Apricus Guaranty is annexed hereto and incorporated herein as Exhibit "R".

80.     Anand, pursuant to Paragraph numbered "8.3" of the Apricus Anand Guaranty, agreed that his personal guaranty shall be governed by and construed in accordance with the laws of the State of New York.

**Ambulatory's Breach of Ambulatory Schedules**

81.     On or about March 1, 2022 and thereafter, Ambulatory defaulted pursuant to the Ambulatory Master Lease and Ambulatory Schedules by failing to remit required monthly

payments due thereon.

82.     As a result of the default on Ambulatory Schedule 01, as of the date of default, there remains due and owing the remaining balance in the amount of $268,589.10, plus sales/use tax in the amount of $23,635.93, plus accrued interest in the amount of $35,307.31, all totaling the sum of $327,532.34, plus attorneys' fees, court costs, service fees, and the costs and expenses of this Action.

83.     As a result of the default on Ambulatory Schedule 02, as of the date of default, there remains due and owing the remaining balance in the amount of $2,745,595.56, plus sales/use tax in the amount of $241,612.50, plus accrued late fees in the amount of $23,338.44, plus accrued interest in the amount of $437,972.66, all totaling the sum of $3,448,519.16, plus attorneys' fees, court costs, service fees, and the costs and expenses of this Action.

84.     As a result of the default on Ambulatory Schedule 04, as of the date of default, there remains due and owing the remaining balance in the amount of $123,614.92, plus sales/use tax in the amount of $10,878.20, plus accrued late fees in the amount of $1,280.44, plus accrued interest in the amount of $24,690.51, all totaling the sum of $160,464.07, plus attorneys' fees, court costs, service fees, and the costs and expenses of this Action.

85.     As a result of the default on Ambulatory Schedule 05, as of the date of default, there remains due and owing the remaining balance in the amount of $193,103.26, plus sales/use tax in the amount of $16,993.17, plus accrued late fees in the amount of $1,003.20, plus accrued interest in the amount of $20,196.26, all totaling the sum of $231,295.89, plus attorneys' fees, court costs, service fees, and the costs and expenses of this Action.

86.     As a result of the default on Ambulatory Schedule 06, as of the date of default, there remains due and owing the remaining balance in the amount of $245,387.00, plus sales/use

tax in the amount of $21,594.14, plus accrued late fees in the amount of $1,278.60, plus accrued interest in the amount of $26,855.47, all totaling the sum of $295,115.21, plus attorneys' fees, court costs, service fees, and the costs and expenses of this Action.

87.     As a result of the default on Ambulatory Schedule 08, as of the date of default, there remains due and owing the remaining balance in the amount of $311,253.91, plus sales/use tax in the amount of $27,390.43, plus accrued late fees in the amount of $1,291.35, plus accrued interest in the amount of $34,030.92, all totaling the sum of $373,966.61, plus attorneys' fees, court costs, service fees, and the costs and expenses of this Action.

88.     As a result of the default on Ambulatory Schedule 09, as of the date of default, there remains due and owing the remaining balance in the amount of $973,539.84, plus sales/use tax in the amount of $85,671.59, plus accrued late fees in the amount of $1,940.10, plus accrued interest in the amount of $69,599.98, all totaling the sum of $1,130,751.51, plus attorneys' fees, court costs, service fees, and the costs and expenses of this Action.

89.     As a result of the default on Ambulatory Schedule 10, as of the date of default, there remains due and owing the remaining balance in the amount of $25,874.98, plus sales/use tax in the amount of $2,277.09, plus accrued late fees in the amount of $41.52, plus accrued interest in the amount of $1,974.39, all totaling the sum of $3,448,519.16, plus attorneys' fees, court costs, service fees, and the costs and expenses of this Action.

**Desert's Breach of Desert Schedules**

90.     On or about April 10, 2022, Desert defaulted pursuant to the Desert Master Lease and Desert Schedules by failing to remit required monthly payments when due thereon.

91.     As a result of the default on Desert Schedule 01, as of the date of default, there remains due and owing the remaining balance in the amount of $94,858.14, plus sales/use tax in

the amount of $8,063.03, plus accrued late fees in the amount of $59.37, plus accrued interest in the amount of $4,570.69, all totaling the sum of $107,551.23, plus attorneys' fees, court costs, service fees, and the costs and expenses of this Action.

92.    As a result of the default on Desert Schedule 03, as of the date of default, there remains due and owing the remaining balance in the amount of $26,023.14, plus sales/use tax in the amount of $2,212.05, plus accrued late fees in the amount of $113.82, plus accrued interest in the amount of $3,145.70, all totaling the sum of $31,494.71, plus attorneys' fees, court costs, service fees, and the costs and expenses of this Action.

93.    As a result of the default on Desert Schedule 04, as of the date of default, there remains due and owing the remaining balance in the amount of $1,182,306.10, plus sales/use tax in the amount of $100,496.10, plus accrued late fees in the amount of $6,820.24, plus accrued interest in the amount of $162,174.56, all totaling the sum of $1,451,797.00, plus attorneys' fees, court costs, service fees, and the costs and expenses of this Action.

94.    As a result of the default on Desert Schedule 05, as of the date of default, there remains due and owing the remaining balance in the amount of $87,887.46, plus sales/use tax in the amount of $7,470.52, plus accrued late fees in the amount of $121.17, plus accrued interest in the amount of $10,123.51, all totaling the sum of $105,602.66, plus attorneys' fees, court costs, service fees, and the costs and expenses of this Action.

95.    As a result of the default on Desert Schedule 06, as of the date of default, there remains due and owing the remaining balance in the amount of $333,692.05, plus sales/use tax in the amount of $28,363.91, plus accrued late fees in the amount of $1,917.22, plus accrued interest in the amount of $45,771.00, all totaling the sum of $409,744.18, plus attorneys' fees, court costs, service fees, and the costs and expenses of this Action.

96.     As a result of the default on Desert Schedule 07, as of the date of default, there remains due and owing the remaining balance in the amount of $65,504.40, plus sales/use tax in the amount of $5,567.96, plus accrued late fees in the amount of $521.64, plus accrued interest in the amount of $9,003.32, all totaling the sum of $80,597.32, plus attorneys' fees, court costs, service fees, and the costs and expenses of this Action.

97.     As a result of the default on Desert Schedule 08, as of the date of default, there remains due and owing the remaining balance in the amount of $133,586.82, plus sales/use tax in the amount of $11,354.96, plus accrued late fees in the amount of $402.70, plus accrued interest in the amount of $17,560.92, all totaling the sum of $162,905.40, plus attorneys' fees, court costs, service fees, and the costs and expenses of this Action.

**Apricus's Breach of Apricus Schedules**

98.     On or about April 10, 2022, Apricus defaulted pursuant to the Apricus Master Lease and Apricus Schedules by failing to remit required monthly payments when due thereon.

99.     As a result of the default on Apricus Schedule 01, as of the date of default, there remains due and owing the remaining balance in the amount of $86,233.26, plus sales/use tax in the amount of $7,588.53, plus other accrued fees in the amount of $803.57, plus accrued interest in the amount of $11,432.82, all totaling the sum of $106,058.18, plus attorneys' fees, court costs, service fees, and the costs and expenses of this Action.

100.     As a result of the default on Apricus Schedule 02, as of the date of default, there remains due and owing the remaining balance in the amount of $1,712,654.72, plus sales/use tax in the amount of $150,713.62, less the security deposit in the amount of $14,696.90, plus accrued interest in the amount of $226,911.44, all totaling the sum of $2,075,582.88, plus attorneys' fees, court costs, service fees, and the costs and expenses of this Action.

101.    As a result of the default on Apricus Schedule 03, as of the date of default, there remains due and owing the remaining balance in the amount of $58,474.74, plus sales/use tax in the amount of $5,145.78, plus accrued late fees in the amount of $470.22, plus accrued interest in the amount of $7,743.56, all totaling the sum of $71,834.30, plus attorneys' fees, court costs, service fees, and the costs and expenses of this Action.

102.    As a result of the default on Apricus Schedule 04, as of the date of default, there remains due and owing the remaining balance in the amount of $142,934.33, plus sales/use tax in the amount of $12,578.22, plus accrued late fees in the amount of $1,060.15, plus accrued interest in the amount of $18,917.41, all totaling the sum of $175,490.11, plus attorneys' fees, court costs, service fees, and the costs and expenses of this Action.

103.    As a result of the default on Apricus Schedule 05, as of the date of default, there remains due and owing the remaining balance in the amount of $345,337.92, plus sales/use tax in the amount of $30,389.74, plus accrued late fees in the amount of $2,270.12, plus accrued interest in the amount of $45,670.42, all totaling the sum of $423,668.20, plus attorneys' fees, court costs, service fees, and the costs and expenses of this Action.

104.    As a result of the default on Apricus Schedule 06, as of the date of default, there remains due and owing the remaining balance in the amount of $46,086.10, plus sales/use tax in the amount of $4,055.58, plus accrued late fees in the amount of $296.52, plus accrued interest in the amount of $6,094.04, all totaling the sum of $56,532.24, plus attorneys' fees, court costs, service fees, and the costs and expenses of this Action.

105.    As a result of the default on Apricus Schedule 07, as of the date of default, there remains due and owing the remaining balance in the amount of $1,152,226.08, plus sales/use tax in the amount of $101,395.90, plus accrued late fees in the amount of $7,312.76, plus accrued

interest in the amount of $152,348.55, all totaling the sum of $1,413,283.29, plus attorneys' fees, court costs, service fees, and the costs and expenses of this Action.

106.   As a result of the default on Apricus Schedule 08, as of the date of default, there remains due and owing the remaining balance in the amount of $29,805.60, plus sales/use tax in the amount of $2,622.89, plus accrued late fees in the amount of $170.24, plus accrued interest in the amount of $4,099.40, all totaling the sum of $36,698.13, plus attorneys' fees, court costs, service fees, and the costs and expenses of this Action.

107.   As a result of the default on Apricus Schedule 09, as of the date of default, there remains due and owing the remaining balance in the amount of $54,278.00, plus sales/use tax in the amount of $4,776.46, plus accrued late fees in the amount of $458.78, plus accrued interest in the amount of $7,483.99, all totaling the sum of $66,997.23, plus attorneys' fees, court costs, service fees, and the costs and expenses of this Action.

108.   As a result of the default on Apricus Schedule 10, as of the date of default, there remains due and owing the remaining balance in the amount of $117,691.20, plus sales/use tax in the amount of $10,356.83, plus accrued late fees in the amount of $568.41, plus accrued interest in the amount of $13,636.87, all totaling the sum of $142,253.31, plus attorneys' fees, court costs, service fees, and the costs and expenses of this Action.

109.   As a result of the default on Apricus Schedule 12, as of the date of default, there remains due and owing the remaining balance in the amount of $45,467.28, plus sales/use tax in the amount of $4,001.12, plus accrued late fees in the amount of $103.00, plus accrued interest in the amount of $4,009.17, all totaling the sum of $53,580.57, plus attorneys' fees, court costs, service fees, and the costs and expenses of this Action.

110.   As a result of the default on Apricus Schedule 13, as of the date of default, there

remains due and owing the remaining balance in the amount of $61,544.34, plus sales/use tax in the amount of $5,415.90, plus accrued late fees in the amount of $274.00, plus accrued interest in the amount of $5,437.68, all totaling the sum of $72,671.92, plus attorneys' fees, court costs, service fees, and the costs and expenses of this Action.

111.   As a result of the default on Apricus Schedule 14, as of the date of default, there remains due and owing the remaining balance in the amount of $1,217,072.94, plus sales/use tax in the amount of $107,102.42, plus accrued interest in the amount of $20,243.56, all totaling the sum of $1,344,418.92, plus attorneys' fees, court costs, service fees, and the costs and expenses of this Action.

**AS AND FOR A FIRST CAUSE OF ACTION**
**AGAINST AMBULATORY**
**(Breach of Ambulatory Master Lease and Ambulatory Schedules)**

112.   Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs numbered "1" through "111" above as if fully set forth at length herein.

113.   The Ambulatory Master Lease and each of the Ambulatory Schedules constitutes a valid and enforceable agreement.

114.   For each of the Ambulatory Schedules, Ambulatory executed a D&A certifying that all the equipment thereunder was received, accepted, installed, and in good operating order.

115.   Canon Medical and Plaintiff have fully complied with and fully performed all of their obligations under the Ambulatory Master Lease and each of the Ambulatory Schedules.

116.   As set forth above, Ambulatory has defaulted on the Ambulatory Master Lease and each of the Ambulatory Schedules by, *inter alia*, failing to remit the required payments pursuant thereto.

117.   As a result of the defaults on the Ambulatory Master Lease and each of the Ambulatory Schedules, the amounts due under each of the Ambulatory Schedules have been

accelerated.

118.    Despite Plaintiff's demands, Ambulatory has failed or neglected and continues to fail or neglect to pay Plaintiff the outstanding amounts owed or any part thereof.

119.    By virtue of the foregoing, Ambulatory is liable to Plaintiff for damages on the Ambulatory Master Lease and Ambulatory Schedules of not less than $6,002,712.77 plus continued interest costs and fees in accordance with the terms of the Ambulatory Master Lease.

## AS AND FOR A SECOND CAUSE OF ACTION
### AGAINST AMBULATORY
**(Accounts Stated)**

120.    Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs numbered "1" through "119" above as if fully set forth at length herein.

121.    Plaintiff duly rendered periodic statements of account with regard to the Ambulatory Master Lease and each of the Ambulatory Schedules to Ambulatory, which statements were received by Ambulatory in the ordinary course of business.

122.    Ambulatory never objected or protested any such statements or any item contained therein, as was its duty and obligation if any error existed.

123.    By virtue of the above, accounts stated have been taken between Plaintiff and Ambulatory on the Ambulatory Master Lease and each of the Ambulatory Schedules, whereby Ambulatory has admitted and acknowledged the debts as accurate and correct in all respects.

124.    As a result of the foregoing, Plaintiff has stated accounts with Ambulatory for total amounts of not less than $6,002,712.77 plus continued interest costs and fees in accordance with the terms of the Ambulatory Master Lease.

## AS AND FOR A THIRD CAUSE OF ACTION
### AGAINST ANAND, DAAN, ARIZONA SURGERY
**(Breach of Ambulatory Guaranties)**

125.    Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs

numbered "1" through "124" above as if fully set forth at length herein.

126.    The Ambulatory Anand Guaranty, Ambulatory DAAN Guaranty, and Ambulatory Arizona Guaranty are each a valid and enforceable agreement.

127.    Anand, DAAN, and Arizona Surgery each defaulted under their respective guaranties by failing to remit the amounts owed by Ambulatory to Plaintiff pursuant to the terms of the Ambulatory Master Lease, Ambulatory Schedules, and Ambulatory Guaranties.

128.    As a result, Anand, DAAN, and Arizona are liable, jointly, severally, and collectively, to Plaintiff for damages of not less than $6,002,712.77 plus continued interest costs and fees in accordance with the terms of the Ambulatory Master Lease and the Ambulatory Guaranties.

**AS AND FOR A FOURTH CAUSE OF ACTION**
**<u>AGAINST AMBULATORY</u>**
**(Foreclosure of Security Interests)**

129.    Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs numbered "1" through "128" above as if fully set forth at length herein.

130.    Pursuant to the terms of the Ambulatory Master Lease and Ambulatory Schedules, Plaintiff is the owner of all equipment described therein and/or has a first lien security interest in the equipment.

131.    Ambulatory defaulted under the specific terms of the Ambulatory Master Lease and each of the Ambulatory Schedules by, *inter alia*, failing to remit the required payments pursuant thereto.

132.    Pursuant to the terms and conditions of the Ambulatory Master Lease and Ambulatory Schedules, upon Ambulatory's defaults thereunder, Plaintiff is entitled to exercise all of the rights and remedies available at law or in equity, against Ambulatory, including the rights and remedies of a secured party under the Uniform Commercial Code.

133.   As a result of Ambulatory's failure to pay all sums due under each of the Ambulatory Schedules, Plaintiff is entitled to foreclose upon all the equipment described in each of the Ambulatory Schedules (collectively, the "Ambulatory Equipment").

134.   Plaintiff duly perfected its security interest in the Ambulatory Equipment by filing its UCC-1 Statements with the Arizona Secretary of State, specifically UCC-1 #2021-002-3254-9, filed on May 4, 2021; UCC-1#2021-002-5254-5, filed on May 17, 2021; UCC-1#2021-003-7915-0, filed on July 22, 2021; UCC-1#2021-003-8627-9, filed on July 27, 2021; UCC-1#2021-003-8630-8 filed on July 27, 2021; UCC-1#2021-003-8634-0, filed on July 27, 2021; UCC-1#2021-003-9052-5, filed on July 28, 2021; UCC-1#2021-003-9053-9 filed July 28, 2021; UCC-1#2021-004-2475-3, filed on August 12, 2021; UCC-1#2021-005-9598-6, filed on October 28, 2021; and UCC-1#2021-006-1503-7, filed on November 8, 2021. Copies of the respective UCC-1 Statements are annexed hereto and incorporated herein as Exhibit "FF".

135.   Upon information and belief, the current location of the Ambulatory Equipment is unknown to Plaintiff.

136.   The value of the Ambulatory Equipment continues to depreciate and therefore, Plaintiff's security for payment of Ambulatory's debt is in jeopardy of being significantly diminished.

137.   By virtue of the foregoing, Plaintiff is entitled to a judgment granting Plaintiff possession of the Ambulatory Equipment in order to foreclose on its security interests in the Ambulatory Equipment and permitting Plaintiff to pursue the rights and remedies provided under the Uniform Commercial Code and applicable law.

**AS AND FOR A FIFTH CAUSE OF ACTION**
**AGAINST AMBULATORY**
**(Replevin)**

138.   Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs

numbered "1" through "137" above as if fully set forth at length herein.

139.    As a result of Ambulatory's default, Plaintiff duly demanded return of possession of the Ambulatory Equipment subject to the Ambulatory Master Lease Schedules. Ambulatory has refused to return possession of the Ambulatory Equipment.

140.    Accordingly, as a result of Ambulatory's failure to pay all sums due under the Ambulatory Master Lease and each of the Ambulatory Schedules and its defaults thereunder, and its refusal to return the Ambulatory Equipment, Plaintiff is entitled to immediate possession of the Ambulatory Equipment.

141.    By reason of the foregoing, Plaintiff is entitled to an order granting it possession of the Ambulatory Equipment.

**AS AND FOR A SIXTH CAUSE OF ACTION**
<u>**AGAINST DESERT**</u>
**(Breach of Desert Master Lease and Desert Schedules)**

142.    Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs numbered "1" through "141" above as if fully set forth at length herein.

143.    The Desert Master Lease and each of the Desert Schedules constitutes a valid and enforceable agreement.

144.    For each of the Desert Schedules, Desert executed a D&A certifying that all the equipment was received, accepted, installed, and in good operating order.

145.    Canon Medical and Plaintiff have fully complied with and fully performed all of their obligations under the Desert Master Lease and each of the Desert Schedules.

146.    As set forth above, Desert has defaulted on the Desert Master Lease and each of the Desert Schedules by, *inter alia*, failing to remit the required payments pursuant thereto.

147.    As a result of the defaults on the Desert Master Lease and each of the Desert Schedules, the amounts due under each of the Desert Schedules have been accelerated.

148.    Despite Plaintiff's demands, Desert has failed or neglected and continues to fail or neglect to pay Plaintiff the outstanding amounts owed or any part thereof.

149.    By virtue of the foregoing, Desert is liable to Plaintiff for damages on the Desert Master Lease and Desert Schedules in the amount of not less than $2,353,192.50 plus continued interest costs and fees in accordance with the terms of the Desert Master Lease.

## AS AND FOR A SEVENTH CAUSE OF ACTION
## AGAINST DESERT
### (Accounts Stated)

150.    Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs numbered "1" through "149" above as if fully set forth at length herein.

151.    Plaintiff duly rendered periodic statements of account with regard to the Desert Master Lease and each of the Desert Schedules to Desert, which statements were received by Desert in the ordinary course of business.

152.    Desert never objected or protested any such statements or any item contained therein, as was its duty and obligation if any error existed.

153.    By virtue of the above, accounts stated have been taken between Plaintiff and Desert on the Desert Master Lease and each of the Desert Schedules, whereby Desert has admitted and acknowledged the debts as accurate and correct in all respects.

154.    As a result of the foregoing, Plaintiff has stated accounts with Desert for total amounts not less than $2,353,192.50 plus continued interest costs and fees in accordance with the terms of the Desert Master Lease.

## AS AND FOR AN EIGHTH CAUSE OF ACTION
## AGAINST ANAND, ARIZONA SURGICAL
### (Breach of Desert Guaranties)

155.    Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs numbered "1" through "154" above as if fully set forth at length herein.

156.    The Desert Anand Guaranty and Desert Surgical Guaranty are each a valid and enforceable agreement.

157.    Anand and Arizona Surgical each defaulted under their respective guaranties by failing to remit the amounts owed by Desert to Plaintiff pursuant to the terms of the Desert Master Lease, Desert Schedules, and Desert Guaranties.

158.    As a result, Anand and Arizona Surgical are liable, jointly, severally, and collectively, to Plaintiff for damages of not less than $2,353,192.50 plus continued interest costs and fees in accordance with the terms of the Desert Master Lease, Desert Schedules, and the Desert Guaranties.

### AS AND FOR A NINTH CAUSE OF ACTION
### AGAINST DESERT
### (Foreclosure of Security Interests)

159.    Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs numbered "1" through "158" above as if fully set forth at length herein.

160.    Pursuant to the terms of the Desert Master Lease and Desert Schedules, Plaintiff is the owner of all equipment described therein and/or has a first lien security interest in the equipment.

161.    Desert defaulted under the specific terms of the Desert Master Lease and each of the Desert Schedules by, *inter alia*, failing to remit the required payments pursuant thereto.

162.    Pursuant to the terms and conditions of the Desert Master Lease and Desert Schedules, upon Desert's defaults thereunder, Plaintiff is entitled to exercise all of the rights and remedies available at law or in equity, against Desert, including the rights and remedies of a secured party under the Uniform Commercial Code.

163.    As a result of Desert's failure to pay all sums due under each of the Desert Schedules, Plaintiff is entitled to foreclose upon all the equipment described in each of the Desert

Schedules (collectively, the "Desert Equipment").

164.    Plaintiff duly perfected its security interest in the Desert Equipment by filing its UCC-1 Statements with the Arizona Secretary of State, specifically UCC-1 #2021-005-1383-3, filed on September 20, 2021; UCC-1#2021-005-1439-2, filed on September 20, 2021; UCC-1#2021-005-1442-4, filed on September 20, 2021; UCC-1#2021-005-2680-6, filed on September 24, 2021; UCC-1#2021-005-3169-4 filed on September 27, 2021; UCC-1#2021-005-6782-7, filed on October 15. 2021; and UCC-1#2021-006-1387-2, filed on November 4, 2021. Copies of the respective UCC-1 Statements are annexed hereto and incorporated herein as Exhibit "GG".

165.    Upon information and belief, the current location of the Desert Equipment is unknown to Plaintiff.

166.    The value of the Desert Equipment continues to depreciate and therefore, Plaintiff's security for payment of Desert's debt is in jeopardy of being significantly diminished.

167.    By virtue of the foregoing, Plaintiff is entitled to a judgment granting Plaintiff possession of the Desert Equipment in order to foreclose on its security interests in the Desert Equipment and permitting Plaintiff to pursue the rights and remedies provided under the Uniform Commercial Code and applicable law.

**AS AND FOR A TENTH CAUSE OF ACTION
AGAINST DESERT
(Replevin)**

168.    Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs numbered "1" through "167" above as if fully set forth at length herein.

169.    As a result of Desert's default, Plaintiff duly demanded return of possession of the Desert Equipment subject to the Desert Master Lease Schedules. Desert has refused to return possession of the Desert Equipment.

170.    Accordingly, as a result of Desert's failure to pay all sums due under the Desert

Master Lease and each of the Desert Schedules and its defaults thereunder, and its refusal to return the Desert Equipment, Plaintiff is entitled to immediate possession of the Desert Equipment.

171.    By reason of the foregoing, Plaintiff is entitled to an order granting it possession of the Desert Equipment.

**AS AND FOR AN ELEVENTH CAUSE OF ACTION**
**AGAINST APRICUS**
**(Breach of Apricus Master Lease and Apricus Schedules)**

172.    Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs numbered "1" through "171" above as if fully set forth at length herein.

173.    The Apricus Master Lease and each of the Apricus Schedules constitutes a valid and enforceable agreement.

174.    For each of the Apricus Schedules, Apricus executed a D&A certifying that all the equipment thereunder was received, accepted, installed, and in good operating order.

175.    Plaintiff and Canon Medical have fully complied with and fully performed all of their obligations under the Apricus Master Lease and each of the Apricus Schedules.

176.    As set forth above, Apricus has defaulted on the Apricus Master Lease and each of the Apricus Schedules by, *inter alia*, failing to remit the required payments pursuant thereto.

177.    As a result of the defaults on the Apricus Master Lease and each of the Apricus Schedules, the amounts due under each of the Apricus Schedules have been accelerated.

178.    Despite Plaintiff's demands, Apricus has failed or neglected and continues to fail or neglect to pay Plaintiff the outstanding amounts owed or any part thereof.

179.    By virtue of the foregoing, Apricus is liable to Plaintiff for damages on the Apricus Master Lease and Ambulatory Schedules of not less than $6,042,569.28 plus continued interest costs and fees in accordance with the terms of the Apricus Master Lease.

## AS AND FOR A TWELFTH CAUSE OF ACTION
## AGAINST APRICUS
### (Accounts Stated)

180.    Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs numbered "1" through "179" above as if fully set forth at length herein.

181.    Plaintiff duly rendered periodic statements of account with regard to the Apricus Master Lease and each of the Apricus Schedules to Apricus, which statements were received by Apricus in the ordinary course of business.

182.    Apricus never objected or protested any such statements or any item contained therein, as was its duty and obligation if any error existed.

183.    By virtue of the above, accounts stated have been taken between Plaintiff and Apricus on the Apricus Master Lease and each of the Apricus Schedules, whereby Apricus has admitted and acknowledged the debts as accurate and correct in all respects.

184.    As a result of the foregoing, Plaintiff has stated accounts with Apricus for total amounts not less than $6,042,569.28 plus continued interest costs and fees in accordance with the terms of the Apricus Master Lease.

## AS AND FOR A THIRTEENTH CAUSE OF ACTION
## AGAINST ANAND
### (Breach of Apricus Guaranty)

185.    Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs numbered "1" through "184" above as if fully set forth at length herein.

186.    The Apricus Anand Guaranty is a valid and enforceable agreement.

187.    Anand defaulted under the Apricus Anand Guaranty by failing to remit the amounts owed by Apricus to Plaintiff pursuant to the terms of the Apricus Master Lease, Apricus Schedules, and Apricus Guaranty.

188.    As a result, Anand is liable to Plaintiff for damages of not less than $6,042,569.28

plus continued interest costs and fees in accordance with the terms of the Apricus Master Lease
and the Apricus Guaranty.

### AS AND FOR A FOURTEENTH CAUSE OF ACTION
### AGAINST APRICUS
### (Foreclosure of Security Interests)

189.    Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs
numbered "1" through "188" above as if fully set forth at length herein.

190.    Pursuant to the terms of the Apricus Master Lease and Apricus Schedules, Plaintiff
is the owner of all equipment described therein and/or has a first lien security interest in the
equipment.

191.    Apricus defaulted under the specific terms of the Apricus Master Lease and each
of the Apricus Schedules by, *inter alia*, failing to remit the required payments pursuant thereto.

192.    Pursuant to the terms and conditions of the Apricus Master Lease and Apricus
Schedules, upon Apricus's defaults thereunder, Plaintiff is entitled to exercise all of the rights and
remedies available at law or in equity, against Apricus, including the rights and remedies of an
owner/secured party under the Uniform Commercial Code.

193.    As a result of Apricus's failure to pay all sums due under each of the Apricus
Schedules, Plaintiff is entitled to foreclose upon all the equipment described in each of the Apricus
Schedules (collectively, the "Apricus Equipment").

194.    Plaintiff duly perfected its security interest in the Apricus Equipment by filing its
UCC-1 Statements with the Arizona Secretary of State, specifically UCC-1 #2020-007-2737-4,
filed on October 15, 2020; UCC-1#2020-007-2741-4, filed on October 15, 2020; UCC-1#2020-
007-2743-3, filed on October 15, 2020; UCC-1#2020-007-2745-1, filed on October 15, 2020;
UCC-1#2020-007-2748-0 filed on October 15, 2020; UCC-1#2020-007-2749-8, filed on October
15. 2020; UCC-1#2020-007-3463-4, filed on October 20, 2020; UCC-1# 2020-007-7930-4, filed

on November 16, 2020, UCC-1#2021-003-4879-1, filed on July 7, 2021; UCC-1#2021-005-9717-0, filed on October 29, 2021; UCC-1#2021-006-2820-0, filed on November 15, 2021, and UCC-1# 2021-006-8630-4, filed on December 13, 2021. Copies of the respective UCC-1 Statements are annexed hereto and incorporated herein as Exhibit "HH".

195.    Upon information and belief, the current location of the Apricus Equipment is unknown to Plaintiff.

196.    The value of the Apricus Equipment continues to depreciate and therefore, Plaintiff's security for payment of Apricus's debt is in jeopardy of being significantly diminished.

197.    By virtue of the foregoing, Plaintiff is entitled to a judgment granting Plaintiff possession of the Apricus Equipment in order to foreclose on its security interests in the Apricus Equipment and permitting Plaintiff to pursue the rights and remedies provided under the Uniform Commercial Code and applicable law.

### AS AND FOR A FIFTEENTH CAUSE OF ACTION
### AGAINST APRICUS
**(Replevin)**

198.    Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs numbered "1" through "197" above as if fully set forth at length herein.

199.    As a result of Apricus's default, Plaintiff duly demanded return of possession of the Apricus Equipment subject to the Apricus Master Lease Schedules. Apricus has refused to return possession of the Apricus Equipment.

200.    Accordingly, as a result of Apricus's failure to pay all sums due under the Apricus Master Lease and each of the Apricus Schedules and its defaults thereunder, and its refusal to return the Apricus Equipment, Plaintiff is entitled to immediate possession of the Apricus Equipment.

201.    By reason of the foregoing, Plaintiff is entitled to an order granting it possession of

the Apricus Equipment.

**WHEREFORE**, Plaintiff, demands judgment on all causes of action, awarding Plaintiff damages on the Ambulatory Master Lease, the Ambulatory Schedules, the Ambulatory Guaranties, the Desert Master Lease, the Desert Schedules, the Desert Guaranties, the Apricus Master Lease, the Apricus Schedules, the Apricus Guaranty, and possession of the Ambulatory Equipment, the Desert Equipment, and the Apricus Equipment as follows:

A.      on the First, Second, and Third Causes of Action each against Ambulatory for the outstanding balances due totaling not less than $6,002,712.77 plus continued interest costs and fees in accordance with the terms of the Ambulatory Master Lease, Ambulatory Schedules and Ambulatory Guaranties;

B.      on the Fourth and Fifth Causes of Action against Ambulatory as follows:

(i)      Directing the foreclosure of Plaintiff's security interest in the Ambulatory Equipment,

(ii)      Enjoining Ambulatory and its respective servants, agents, employees, officers, assigns, representatives, and all other persons in active concert and participation with Ambulatory, including, but not limited to, Anand, DAAN, and Arizona Surgery, from moving, selling, assigning, transferring, secreting, or otherwise disposing of the Ambulatory Equipment,

(iii)      Directing Ambulatory, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure and applicable law, to deliver to Plaintiff possession of the Ambulatory Equipment, or in the alternative, to make the Ambulatory Equipment available to Plaintiff at a reasonably convenient time and place, and

(iv)      Issuing an order of seizure pursuant to Rule 64 of the Federal Rules of Civil

Procedure as to the Ambulatory Equipment and directing that if Ambulatory fails to deliver to Plaintiff possession of the Ambulatory Equipment, that Ambulatory turnover the Ambulatory Equipment to the Marshal, Sheriff, and/or any other appropriate legal authority, and if Ambulatory fails to turnover the Ambulatory Equipment as aforesaid, that the Marshal, Sheriff, and/or any other appropriate legal authority may break open, enter, and search for the Ambulatory Equipment at the locations where Ambulatory represented in the Ambulatory Schedules, or wherever the Ambulatory Equipment may be located, whether within or without the State of Arizona;

C.       on the Sixth, Seventh, and Eighth Causes of Action against Desert, Anand, DAAN, and Arizona Surgical, jointly, severally, and collectively for the outstanding balances due totaling not less than $2,353,192.50 plus continued interest costs and fees in accordance with the terms of the Desert Master Lease, the Desert Schedules, and the Desert Guaranties;

D.       on the Ninth, and Tenth Causes of Action against Desert as follows:

(i)       Directing the foreclosure of Plaintiff's security interests in the Desert Equipment,

(ii)      Enjoining Desert and its respective servants, agents, employees, officers, assigns, representatives, and all other persons in active concert and participation with Ambulatory, including, but not limited to, Anand and Arizona Surgical, from moving, selling, assigning, transferring, secreting, or otherwise disposing of the Desert Equipment,

(iii)     Directing Desert, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure and applicable law, to deliver to Plaintiff possession of the Desert Equipment, or in the alternative, to make the Desert Equipment available to Plaintiff at a reasonably convenient time and place, and

      (iv)    Issuing an order of seizure pursuant to Rule 64 of the Federal Rules of Civil Procedure as to the Desert Equipment and directing that if Desert fails to deliver to Plaintiff possession of the Desert Equipment, that Desert turnover the Desert Equipment to the Marshal, Sheriff, and/or any other appropriate legal authority, and if Desert fails to turnover the Desert Equipment as aforesaid, that the Marshal, Sheriff, and/or any other appropriate legal authority may break open, enter, and search for the Desert Equipment at the locations where Desert represented in the Desert Schedules, or wherever the Desert Equipment may be located, whether within or without the State of Arizona;

E.      on the Eleventh, Twelfth, and Thirteenth Causes of Action each against Apricus for the outstanding balances due totaling not less than $6,042,569.28 plus continued interest costs and fees in accordance with the terms of the Apricus Master Lease, Apricus Schedules and the Apricus Guaranties and the costs and expenses of this Action;

E.      on the Fourteenth and Fifteenth Causes of Action against Apricus as follows:

      (i)    Directing the foreclosure of Plaintiff's security interests in the Apricus Equipment,

      (ii)    Enjoining Apricus and its respective servants, agents, employees, officers, assigns, representatives, and all other persons in active concert and participation with Apricus, including, but not limited to, Anand, from moving, selling, assigning, transferring, secreting, or otherwise disposing of the Apricus Equipment,

      (iii)    Directing Apricus, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure and applicable law, to deliver to Plaintiff possession of the Apricus Equipment, or in the alternative, to make the Apricus Equipment available to Plaintiff at a reasonably convenient time and place, and

(iv)     Issuing an order of seizure pursuant to Rule 64 of the Federal Rules of Civil Procedure as to the Apricus Equipment and directing that if Apricus fails to deliver to Plaintiff possession of the Apricus Equipment, that Apricus turn over the Apricus Equipment to the Marshal, Sheriff, and/or any other appropriate legal authority, and if Apricus fails to turn over the Apricus Equipment as aforesaid, that the Marshal, Sheriff, and/or any other appropriate legal authority may break open, enter, and search for the Apricus Equipment at the locations where Apricus represented in the Apricus Schedules, or wherever the Apricus Equipment may be located, whether within or without the State of Arizona;

F.     And for such other and further relief as the Court deems proper.

Dated: New York, New York
         February 28, 2023

                              **PLATZER, SWERGOLD,**
                              **GOLDBERG, KATZ & JASLOW, LLP**

                              */s/ Clifford A. Katz*
                              Clifford A. Katz
                              475 Park Avenue South, 18th Floor
                              New York, New York 10016
                              Tel.  (212) 593-3000
                              Fax.  (212) 593-0353
                              Email: ckatz@platzerlaw.com

                              *Attorneys for Plaintiff, Canon Financial Services,*
                              *Inc.*