UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
------------------------------------------------------------------- x
```
CANON FINANCIAL SERVICES, INC. as assignee of  :
CANON MEDICAL SYSTEMS USA, INC.,                :
                                                :       REPORT AND
                                Plaintiff,       :       RECOMMENDATION
                                                :
              -against-                         :       No. 23-CV-1568-PKC-JRC
                                                :
AMBULATORY SURGERY CENTERS, LLC,                :
KISHLAY ANAND, DAAN INVESTMENT                  :
SERVICES LLLP, ARIZONA SURGERY PARTNERS, :
LLC, DESERT MIRAGE SURGERY CENTER, LLC,         :
ARIZONA SURGICAL PARTNERS LLC, and              :
ARIZONA IMAGING CENTER, LLC d/b/a APRICUS       :
IMAGING CENTER,                                 :
                                Defendants.      :
                                                :
```
-------------------------------------------------------------------x
```
JAMES R. CHO, United States Magistrate Judge:

Plaintiff Canon Financial Services, Inc., as assignee of Canon Medical Systems USA, Inc.

("plaintiff"), brings this diversity action for, *inter alia*, breach of contract against defendants

Ambulatory Surgery Centers, LLC ("Ambulatory"), Kishlay Anand ("Anand"), Daan Investment

Services LLLP ("Daan"), Arizona Surgery Partners, LLC ("Arizona Surgery"), Desert Mirage

Surgery Center, LLC ("Desert"), Arizona Surgical Partners LLC ("Arizona Partners") and Arizona

Imaging Center, LLC d/b/a Apricus Imaging Center ("Apricus") (collectively, "defendants"),

arising out of defendants' alleged breach of agreements for the lease of medical equipment.  *See*

Compl., Dkt. 1.  Currently before this Court, on referral from the Honorable Pamela K. Chen, is

plaintiff's motion for default judgment against defendants.  *See* Mot. for Default J., Dkt. 47.  For

the reasons set forth below, this Court respectfully recommends granting plaintiff's motion.

## I.    Factual Background

The following facts are drawn from the Complaint and accompanying exhibits, which are

accepted as true for purposes of this motion.  *See* Dkt. 1.

On or about April 29, 2021, Canon Medical Systems USA, Inc. ("Canon Medical") entered into a master lease agreement with Ambulatory by which Canon Medical leased certain medical equipment to Ambulatory.  Compl. ¶¶ 1, 20; Ambulatory Master Lease Agreement, Dkt. 1-1 at ECF pages[1] 2-3.  On or about September 16, 2021, Canon Medical entered into a master lease agreement with Desert by which Canon Medical leased certain medical equipment to Desert.  Compl. ¶¶ 2, 40; Desert Master Lease Agreement, Dkt. 1-1 at ECF pages 36-37.  On or about October 14, 2020, Canon Medical entered into a master lease agreement with Apricus by which Canon Medical leased certain medical equipment to Apricus.  Compl. ¶¶ 3, 58; Apricus Master Lease Agreement, Dkt. 1-1 at ECF pages 65-66.

Each master lease agreement provided that the parties would sign a separate "schedule agreement" for each lease of equipment, which incorporated the terms and conditions of the master lease.  Compl. ¶¶ 21, 41, 59.  In addition, each master lease agreement provided for the lessee to sign and forward a Delivery and Acceptance Certificate for each schedule agreement, establishing unconditional and irrevocable acceptance of the equipment described in the schedule agreement. *Id*. ¶¶ 22, 42, 60.  Each master lease agreement stated than an event of default occurs when the lessee fails to make any payment due and owing within 10 days of the due date.  *Id.* ¶¶ 25, 45, 63. Plaintiff has submitted signed schedules and Delivery and Acceptance Certificates for each.  *See* Dkt. 1-1 at ECF pages 12-34 (Ambulatory), 44-63 (Desert), 71-108 (Apricus).

Pursuant to written guaranties dated April 23, 2021, Anand, Daan and Arizona Surgery guarantied the Ambulatory Master Lease.  Compl. ¶ 4; Anand Guaranty, Dkt. 1-1 at ECF pages 4-6; Daan Guaranty, Dkt. 1-1 at ECF pages 7-8; Arizona Surgery Guaranty, Dkt. 1-1 at ECF pages 9-10. Pursuant to written guaranties dated September 13, 2021, Anand and Arizona Partners guarantied the Desert Master Lease.  Compl. ¶ 5; Anand Guaranty, Dkt. 1-1 at ECF pages 38-40; Arizona

---

[1] References to the page numbers generated by the Court's electronic case filing system appear as "ECF page."

Partners Guaranty, Dkt. 1-1 at ECF pages 41-42.  Pursuant to a written guaranty dated October 5, 2020, Anand guarantied the Apricus Master Lease.  Compl. ¶ 6; Anand Guaranty, Dkt. 1-1 at ECF pages 67-69.

Each master lease agreement provides that Canon Medical "may . . . sell, assign, or transfer" the agreement without notice to defendants.  *See, e.g.*, Ambulatory Master Lease ¶ 12.  On February 21, 2023, Canon Medical assigned the Ambulatory Master Lease, the Desert Master Lease, and the Apricus Master Lease to plaintiff.  Compl. ¶ 8; Certifications of Assignment, Dkt. 47-5.

Between March 1 and April 10, 2022, by failing to remit the required monthly payments due thereon, Ambulatory defaulted on the Ambulatory Master Lease Agreement, Desert defaulted on the Desert Master Lease Agreement, and Apricus defaulted on the Apricus Master Lease Agreement.  Compl. ¶¶ 81, 90, 98.  The guarantors of each master lease agreement also defaulted by their failure to honor their respective guaranties and make payments when due.  *Id.* ¶¶ 127, 157, 187.

## II.    Procedural Background

On February 28, 2023, plaintiff commenced this action.  *See* Dkt. 1.  Plaintiff asserts claims for breach of contract, account stated, breach of guaranty, foreclosure of security interests and replevin, with respect to each of the Ambulatory, Desert and Apricus master lease agreements and schedules.  *See generally* Compl.

After service on defendants was purportedly effected, defendants Anand and Daan (together, the "Daan defendants") filed an Answer through counsel, while the remaining defendants failed to appear or otherwise defend the action.  *See* Answer, Dkt. 24.  Plaintiff sought entry of default against those defendants on October 26, 2023, *see* Request for Certificate of Default, Dkt. 19, which was granted on November 7, 2023, *see* Entry of Default, Dkt. 22.

On January 9, 2024, counsel for Anand and Daan moved to withdraw as counsel, which this Court granted.  *See* Mot. to Withdraw, Dkt. 29; Min. Entry dated Jan. 18, 2024.  At that time, the Court warned Daan that corporations cannot appear in federal court without counsel.  *See* Min. Entry dated 1/18/2024  The Court further warned Anand that his failure to participate in the action may result in the Court finding Anand and Daan in default.  *Id.*

After Anand failed to appear at several court conferences, including conferences scheduled for July 24, 2024 and August 5, 2024, and Daan failed to appear entirely through counsel, the Court directed Anand to show cause why his Answer should not be stricken and default entered against him for failure to appear at court conferences and to comply with court orders, and why Anand had failed to retain counsel on behalf of defendant Daan.  *See* Min. Entries dated 7/24/2024 and 8/5/2024.  On September 3, 2024, after Anand failed to comply with the Order to Show Cause, this Court directed plaintiff to request a certificate of default from the Clerk of Court against Anand and Daan.  *See* Order dated 9/3/2024.  On September 4, 2024, the Clerk of Court entered default against Anand and Daan.  *See* Dkt. 46.

On October 26, 2024, plaintiff moved for default judgment, *see* Mot. for Default J., Dkt. 47, which the Honorable Pamela K. Chen referred to this Court for a report and recommendation, *see* Order dated 10/28/2025.

At a motion hearing held on January 7, 2025, defendants failed to appear despite receiving notice of the hearing.  *See* Min. Entry dated 1/7/2025.  In connection with the instant motion, the Court directed plaintiff to supplement its submissions in support of the damages sought against defendants.  *Id.*

## III.    Discussion

### A.    Personal and Subject Matter Jurisdiction

As an initial matter, the Court notes that it has both personal and subject matter jurisdiction

over this action.  Specifically, this Court has personal jurisdiction over defendants pursuant to the forum selection clause contained in the master lease agreements.  It is well established that "[p]arties can consent to personal jurisdiction through forum-selection clauses in contractual agreements."  *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006).  "Where an agreement contains a valid and enforceable forum selection clause, . . . it is not necessary to analyze jurisdiction under New York's long-arm statute or federal constitutional requirements of due process."  *Gordian Grp., LLC v. Syringa Expl., Inc.*, 168 F. Supp. 3d 575, 581 (S.D.N.Y. 2016) (citation omitted).  Each of the master lease agreements provides that "[the parties] consent to the jurisdiction of any court located in New York."  *See, e.g.*, Ambulatory Lease Agreement ¶ 15.

Further, this Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because plaintiff is a citizen of New Jersey (Compl. ¶ 9), defendants are citizens of Arizona,[2] Affidavit of Michael Zimmerman ("Zimmerman Aff.") ¶¶ 12-18, Dkt. 47-1, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

### B.     Default Judgment Standard

Rule 55 of the Federal Rules of Civil Procedure governs motions for default judgment.  The Rule sets forth a two-step process for entry of a default judgment.  *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95-96 (2d Cir. 1993).  First, the Clerk of the Court enters the default pursuant to Rule 55(a) by notation of the party's default on the Clerk's record of the case.  *See id.*; *see also* Fed R. Civ. P. 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.").  This first step is nondiscretionary.  *See United States v. Conolly*, 694 F. App'x 10, 12 (2d Cir. 2017).  Second, after the Clerk of the Court enters a default against a party, if that party fails to appear or otherwise move to set aside the default pursuant to

---

[2] "[A] limited liability company [] takes the citizenship of its members."  *See Bayerische Landesbank, New York Branch v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 49 (2d Cir. 2012).

Rule 55(c), the plaintiff may apply to the court for a default judgment.  *See* Fed. R. Civ. P. 55(b)(2).

Here, after defendants Ambulatory, Arizona Surgery, Desert, Arizona Partners and Apricus failed to respond to the Complaint, the Clerk of the Court entered defaults against them.  To date, those defendants have not appeared or moved to vacate the entries of default.

###    C.    Striking the Answer of Defendants Anand and Daan

As to the Daan defendants, despite earlier filing an Answer, those defendants have willfully failed to participate in this action.  Under Rules 16(f)(1)(A) and 37(b)(2)(A)(iii) of the Federal Rules of Civil Procedure, a court may sanction a party by striking its pleadings if that party fails to appear at a scheduling or other pretrial conference.  *See Muller v. NYC Motorcars of Freeport Corp.*, No. 20-CV-1497, 2024 WL 3431957, at *5 (E.D.N.Y. July 16, 2024).  Courts evaluating whether striking pleadings is an appropriate sanction consider:  (i) whether the party's actions have been willful; (ii) whether lesser sanctions would be effective; (iii) the duration of noncompliance; and (iv) whether the noncompliant party has been warned that its pleadings may be struck.  *See Xin Hao Liu v. Millenium Motors Sports, LLC*, No. 17-CV-6438, 2020 WL 7028924, at *3 (E.D.N.Y. Nov. 5, 2020), *report and recommendation adopted*, 2020 WL 7024378 (E.D.N.Y. Nov. 30, 2020).  "Willfulness is typically inferred from the violation of multiple court orders."  *Icon Int'l, Inc. v. Elevation Health LLC*, 347 F.R.D. 274, 288 (S.D.N.Y. 2024) (citation omitted).

Since the Daan defendants "discharg[ed] [Joseph Capobianco] as the attorney for the Daan defendants," Affidavit of Joseph Capobianco ¶ 4, Dkt. 29-1, they have failed to comply with this Court's orders, failed to appear for court conferences, failed to explain their noncompliance and failed to offer any opposition to plaintiff's motion for default judgment.  The continuing dilatory conduct by the Daan defendants and their refusal to comply with the Court's orders demonstrate the willfulness of their default.  *See Guggenheim Cap., LLC v. Birnbaum*, 722 F.3d 444, 451 (2d Cir. 2013) ("sustained recalcitrance" warranted finding of willfulness); *Icon Int'l*, 347 F.R.D. at 288;

*Certified Interiors, Inc. v. Alspec Indus. Ltd.*, No. 22-CV-7043, 2024 WL 5399240, at *2 (E.D.N.Y. Nov. 20, 2024); *Vargas v. Jet Peru-Courier Corp.*, No. 15-CV-6859, 2018 WL 1545699, at *4 (E.D.N.Y. Mar. 14, 2018) ("Defendants' repeated failure to comply with court orders and deadlines for an extended period over several months weigh[s] strongly in favor of dispositive sanctions."), *report and recommendation adopted*, 2018 WL 1545679 (E.D.N.Y. Mar. 28, 2018).

Having been afforded ample time and opportunities to respond and participate in this action, the Daan defendants, by their persistent flouting of court orders and deadlines, have demonstrated that the imposition of lesser sanctions would be futile. *See Certified Interiors*, 2024 WL 5399240, at *2. The Daan defendants have repeatedly disregarded the Court's orders despite several warnings as to the consequences of their derelictions. Indeed, the Court has cautioned the Daan defendants that their continued failure to respond would result in the striking of their answer and entry of default. Despite being repeatedly warned and given opportunities by this Court to cure their deficiencies, the Daan defendants have continued their pattern of noncompliance. In light of the Daan defendants' continuing dilatory conduct, the Court recommends striking the Daan defendants' answer. *See Icon Int'l*, 347 F.R.D. at 288; *Certified Interiors*, 2024 WL 5399240, at *2; *United States v. Real Prop. & Premises Located at 26421 Riverrock Way, Santa Calrita, California 91350-3995, & All Proceeds Traceable Thereto*, No. 15-CV-6762, 2022 WL 2466833, at *3 (E.D.N.Y. May 20, 2022) (collecting cases).

In addition, as the Daan defendants have been previously warned, corporate entities are not permitted to proceed *pro se* in federal court. *See Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 202 (1993); *Lattanzio v. COMTA*, 481 F.3d 137, 139-40 (2d Cir. 2007). Accordingly, Daan's failure to retain new counsel provides an independent basis for striking its answer and entering default against it.

If a default is entered under Rule 37, courts follow the same procedures as under Rule 55

for assessing liability and damages. *See, e.g., Ramgoolie v. Ramgoolie*, No. 16-CV-3345, 2021 WL 8013769, at *2 (S.D.N.Y. Nov. 24, 2021), *report and recommendation adopted*, 2022 WL 669868 (S.D.N.Y. Mar. 4, 2022); *Kuruwa v. Meyers*, 823 F. Supp. 2d 253, 256 (S.D.N.Y. 2011), *aff'd*, 512 F. App'x 45 (2d Cir. 2013).

### D.    Liability

When evaluating a plaintiff's application for a default judgment, "a court is required to accept all [] factual allegations as true and draw all reasonable inferences in [plaintiff's] favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).  "Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law."  *Labarbera v. ASTC Lab'ys., Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (internal quotations and citations omitted); *see also TAGC Mgmt., LLC v. Lehman, Lee & Xu Ltd.*, 536 F. App'x 45, 46 (2d Cir. 2013) ("[P]rior to entering default judgment, a district court is required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law.") (internal quotations and citations omitted).

A default serves as the defendant's admission that the complaint's well-pleaded factual allegations are true. *See City of New York v. Mickalis Pawn Shop*, 645 F.3d 114, 137 (2d Cir. 2011); *Finkel*, 577 F.3d at 84.  A fact is not considered "well-pleaded," however, "if it is inconsistent with [the] other allegations of the complaint or with facts of which the court can take judicial notice, or is contrary to uncontroverted material in the file of the case." *Hop Hing Produces Inc. v. Lin Zhang Trading Co., Inc.*, No. 11-CV-3259, 2013 WL 3990761, at *3 (E.D.N.Y. Aug. 5, 2013) (internal quotations and citations omitted).  Ultimately, whether to grant a motion for default judgment is "left to the [court's] sound discretion."  *Shah v. New York State Dep't of Civ. Serv.*, 168 F.3d 610, 615 (2d Cir. 1999); *Div. 1181 Amalgamated Transit Union-New York Emps. Pension Fund v. D & A Bus Co.*, 270 F. Supp. 3d 593, 606 (E.D.N.Y. 2017).

## E.    Service of Process

Where the defendant has defaulted, the plaintiff must establish adequate service in order to obtain a default judgment.  *See Chen v. Best Miyako Sushi Corp.*, No. 16-CV-2012, 2021 WL 707273, at *8 (S.D.N.Y. Feb. 1, 2021), *report and recommendation adopted*, 2021 WL 706412 (S.D.N.Y. Feb. 19, 2021); *Miranda v. Astoria Provisions, LLC*, No. 19-CV-2923, 2020 WL 6370058, at *3 (E.D.N.Y. July 24, 2020), *report and recommendation adopted*, 2020 WL 5810160 (E.D.N.Y. Sept. 30, 2020); *see also Mickalis Pawn Shop*, 645 F.3d at 133 ("[B]efore a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant.") (internal quotation marks, brackets, and citation omitted).  "Default judgments are disfavored, so before a district court will enter one, it must ensure that the defaulting defendants received notice of the claims against them and were provided an opportunity to answer those allegations."  *Johannes Baumgartner Wirtschafts-Und Vermögensberatung GmbH v. Salzman*, 969 F. Supp. 2d 278, 287 n.6 (E.D.N.Y. 2013) (citing *State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 168 (2d Cir. 2004)).  Plaintiff bears the burden of proving that service was adequate.  *See Freedom Mortg. Corp. v. Monteleone*, 628 F. Supp. 3d 455, 461 (E.D.N.Y. 2022); *Rahman v. Red Chili Indian Café, Inc.*, No. 17-CV-5156, 2021 WL 2003111, at *2 (S.D.N.Y. May 19, 2021).

Rule 4 of the Federal Rules of Civil Procedure permits service on a corporation in a manner authorized by the law of the forum state.  *See* Fed. R. Civ. P. 4(e)(1), 4(h)(1)(A).  Rule 4 and New York law also provide for service on a "corporation . . . by delivering a copy of the summons and of the complaint to an officer, a managing agent, or any other agent authorized by appointment or by law to receive service of process."  Fed. R. Civ. P. 4(h)(1)(B); *see* N.Y. C.P.L.R. § 311-a (plaintiff may serve a limited liability company by delivering the summons to any "agent authorized by appointment to receive process, or [] to any other person designated by the limited

9

liability company to receive process").

Here, plaintiff served Ambulatory, Arizona Surgery, Desert, Arizona Partners, and Apricus by delivery of the Summons and Complaint to an authorized agent. *See* Summons Returned Executed, Dkts. 10, 13-16. Accordingly, plaintiff properly served defendants pursuant to Rule 4 and New York's Civil Practice Law & Rules. The Daan defendants answered the Complaint without raising insufficient service, thereby submitting to the personal jurisdiction of the Court. *See* Fed. R. Civ. P. 12(h)(1); *Roberts v. Bennaceur*, 658 F. App'x 611, 616 (2d Cir. 2016) (unlike subject matter jurisdiction, personal jurisdiction can be "purposely waived or inadvertently forfeited").

### F.    Breach of Contract

In its motion for default judgment, plaintiff seeks relief only under its breach of contract claims – for breach of the master lease agreements and the corresponding guaranties.[3]  *See* Pl. Mem. at 13, Dkt. 47-14.

#### 1.    Choice of Law

This Court must first determine what law to apply to plaintiff's claims. *See, e.g., D'Amato v. Five Star Reporting, Inc.*, 80 F. Supp. 3d 395, 407 (E.D.N.Y. 2015). The instant case was predicated upon diversity jurisdiction, pursuant to 28 U.S.C. § 1332(a)(1). *See* Compl. ¶ 17. The Second Circuit has held that a federal court sitting in diversity applies the choice-of-law rules of the state in which it sits. *See Maryland Cas. Co. v. Cont'l Cas. Co.*, 332 F.3d 145, 151 (2d Cir. 2003). "In a contract dispute, New York courts will generally honor a choice-of-law provision in an

---

[3] Courts applying New York law have held that a plaintiff that prevails on its common law breach of contract claim cannot, in connection with the same allegations of failure to pay money owed, be found liable on claims for "account stated." *See, e.g., Arch Specialty Ins. Co. v. Kajavi Corp.*, No. 18-CV-4043, 2019 WL 3719461, at *3 (E.D.N.Y. July 11, 2019) ("Plaintiff's claim for account stated, however, fails [because] [a] defendant cannot be found liable on both an account stated claim . . . and a breach of contract claim . . . in connection with the same allegations of a failure to pay monies owed.") (citations and internal quotation marks omitted), *report and recommendation adopted*, 2019 WL 3717441 (E.D.N.Y. Aug. 7, 2019); *see also Indu Craft, Inc. v. Bank of Baroda*, 47 F.3d 490, 497 (2d Cir. 1995) (holding that a plaintiff seeking compensation for the same injury under different legal theories is entitled to only one recovery).

agreement." *Scharnikow v. Siracuse*, No. 15-CV-6991, 2016 WL 7480360, at *3 (E.D.N.Y. Dec. 6, 2016) (citation omitted), *report and recommendation adopted*, 2016 WL 7480364 (E.D.N.Y. Dec. 29, 2016).

Here, the guaranties and the master lease agreements each contain a New York choice of law provision. *See, e.g.*, Ambulatory Lease Agreement ¶ 15; Anand (Ambulatory) Guaranty ¶ 8.3. In addition, where, as here, defendants have defaulted, "it can be said that they have consented to the application of the forum state's law." *NextGear Cap., Inc. v. Tristate Auto Serv. Ctr., Inc.*, No. 23-CV-9458, 2025 WL 897565, at *7 (E.D.N.Y. Feb. 27, 2025) (citation omitted), *report and recommendation adopted*, 2025 WL 895849 (E.D.N.Y. Mar. 24, 2025); *see Leser v. U.S. Bank Nat'l Ass'n*, No. 09-CV-2362, 2012 WL 4472025, at *5 (E.D.N.Y. Sept. 25, 2012); *Chung v. Sano*, No. 10-CV-2301, 2011 WL 1303292, at *7 (E.D.N.Y. Feb. 25, 2011) (applying New York law where defendants defaulted), *report and recommendation adopted*, 2011 WL 1298891 (E.D.N.Y. Mar. 31, 2011). As plaintiff exclusively applies New York law, and as defendants have proffered no argument to the contrary by virtue of their default, the Court applies New York law to the claims and issues in this action. *See Pogodin v. Cryptorion Inc.*, No. 18-CV-791, 2020 WL 13581660 (E.D.N.Y. Sept. 17, 2020), *adopted*, Order (E.D.N.Y. Oct. 13, 2020).

### 2.    Substantive Law

"To state a claim for breach of contract under New York law, 'the complaint must allege: [1] the formation of a contract between the parties; [2] performance by the plaintiff; [3] failure of defendant to perform; and [4] damages.'" *Orlander v. Staples, Inc.*, 802 F.3d 289, 294 (2d Cir. 2015) (quoting *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 142 (2d Cir. 2011)).

Here, the well-pleaded allegations in the Complaint, accepted as true, establish defendants' liability for breach of contract. As to the first element – the existence of a contract – the Complaint alleges, and the exhibits proffered by plaintiff establish, that the parties entered into master lease

agreements and guaranties under which plaintiff agreed to supply certain medical equipment to defendants.

Second, plaintiff performed its obligations by providing medical equipment to defendants, but defendants stopped paying plaintiff the agreed lease payments. The Court, therefore, concludes that plaintiff has properly alleged a breach of contract claim based on defendants' failure to pay plaintiff the amounts due for the medical equipment leased to them.

The elements of a *prima facie* case for breach of guaranty are similar: "[I]n an action against a guarantor, a plaintiff must show: (1) the existence of the guaranty; (2) the underlying debt; and (3) the guarantor's failure to perform under the guaranty." *Khotovitskaya v. Shimunov*, No. 18-CV-7303, 2024 WL 1159557, at *4 (E.D.N.Y. Mar. 18, 2024) (quoting *UMB Bank, N.A. v. Bluestone Coke, LLC*, No. 20-CV-2043, 2020 WL 6712307, at *4 (S.D.N.Y. Nov. 16, 2020)); *see Bank of Am., N.A. v. Vanderbilt Trading USA LLC*, No. 17-CV-7167, 2019 WL 8807747, at *8 (E.D.N.Y. Sept. 9, 2019). "A guaranty is a collateral promise to answer for the payment of a debt or obligation of another, in the event the first person [or entity] liable to pay or perform the obligation fails." *Vanderbilt Trading*, 2019 WL 8807747, at *8 (citation omitted).

Here, plaintiff has established that the guarantors (*i.e.*, Anand, Daan, Arizona Surgery, and Arizona Partners) signed written guaranties of the master lease agreements, under which the guarantors had an obligation to unconditionally pay all the amounts owed to plaintiff in connection with any default under the master lease agreements. Further, plaintiff supplied medical equipment to defendants Ambulatory, Desert and Apricus ("signatory defendants"), the receipt of which is documented by Delivery and Acceptance Certificates, the signatory defendants to the master lease agreements defaulted, and the guarantors did not remit the requisite payments. Plaintiff has adequately alleged breach of contract against all defendants and, thus, the Court may properly assess the damages incurred.

12

### G.    Damages

Although the allegations of a complaint pertaining to liability are deemed admitted upon entry of a default judgment, allegations relating to damages are not.  *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) (citing *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974)).  "Because the extent of the damages pleaded by a plaintiff is not deemed to be established by the default, the Court must conduct 'an inquiry in order to ascertain the amount of damages with reasonable certainty.'"  *Trs. of Loc. 7 Tile Indus. Welfare Fund v. All Flooring Sols., LLC*, No. 19-CV-126, 2020 WL 9814088, at *3 (E.D.N.Y. Feb. 12, 2020) (quoting *Credit Lyonnais Secs. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)).  A court may make this determination based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence.  *See* Fed. R. Civ. P. 55(b)(2); *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991).

Having found that the Complaint establishes defendants' liability for breach of contract, the Court now addresses the damages plaintiff is entitled to recover.  Under New York law, it is well settled that "[a] party injured by breach of contract is entitled to be placed in the position it would have occupied had the contract been fulfilled according to its terms."  *Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 185 (2d Cir. 2007) (citation omitted); *see LG Cap. Funding, LLC v. Wowio, Inc.*, No. 16-CV-6632, 2018 WL 3202077, at *10 (E.D.N.Y. Apr. 24, 2018), *report and recommendation adopted*, 2018 WL 2224991 (E.D.N.Y. May 15, 2018).  In an action for breach of contract for failure to pay, "the plaintiff is entitled to recover the unpaid amount due under the contract plus interest."  *GATX Corp. v. Aero Jet Corporate*, No. 13-CV-4400, 2014 WL 3585887, at *4 (S.D.N.Y. July 22, 2014), *report and recommendation adopted*, 2014 WL 3925233 (S.D.N.Y. Aug. 11, 2014); *see Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 109 (2d Cir. 2007) (damages include "money that the breaching party agreed to pay under the

contract.").

Plaintiff seeks a principal damage award in the amount of $4,446,422.79[4] based on the payments owed by defendants in connection with the Ambulatory Master Lease Schedules.  *See* Supp. Zimmerman Aff. ¶¶ 22-30, Dkt. 55; Statements of Account for Ambulatory Master Lease, Dkt. 55-4.  The amount owed to plaintiff takes into account credits in the amount of $1,822,714.40, which includes payments made by defendants post-default,[5] and $785,000 received by plaintiff from the sale of equipment subject to the Ambulatory Master Lease.  Supp. Zimmerman Aff. ¶ 17; Ambulatory Payments, Dkt. 55-1.  Plaintiff has waived all unpaid late fees and charges.  *See* Supp. Zimmerman Aff. ¶ 53.

In connection with the Desert Master Lease Schedules, plaintiff seeks a principal damage award in the amount of $1,336,958.57.  *See* Supp. Zimmerman Aff. ¶¶ 31-38; Statement of Account for Desert Master Lease, Dkt. 55-5.  The amount owed includes payments made by defendants, and $721,157.55 received by plaintiff from the sale of equipment subject to the Desert Master Lease, for total credits in the amount of $855,905.06.  *See* Supp. Zimmerman Aff. ¶ 19; Desert Payments, Dkt. 55-2.

As to the Apricus Master Lease Schedules, plaintiff seeks a principal damage award in the amount of $4,243.189.12.  *See* Supp. Zimmerman Aff. ¶¶ 39-52.  The principal balance takes into account payments made by defendants, and $1,150,000 received by plaintiff from the sale of equipment subject to the Apricus Master Lease, for total credits in the amount of $1,438,617.37.  *See id.* ¶ 21; Apricus Payments, Dkt. 55-3.

In response to the Court's direction to supplement their evidentiary submissions, plaintiff

---

[4] The principal amounts owed include sales tax, calculated at 8.8 percent for the Ambulatory and Apricus Master Leases and at 8.5 percent for the Desert Master Lease.  *See* Supplemental Zimmerman Affidavit ("Supp. Zimmerman Aff.") ¶¶ 23 n.12, 32 n.16, 40 n.19, Dkt. 55.

[5] Where defendants made payments in excess of the scheduled monthly amount due, plaintiff applied payments to the oldest open charges across all schedules.  *See* Supp. Zimmerman Aff. ¶ 16; Payments, Dkts. 55-1, 55-2, 55-3.

has now substantiated its damages claims by providing detailed invoices showing the amounts owed under each lease schedule, a listing of all the payments received and credits applied to defendants' account, and a description of how those credits were applied to the outstanding balance.  *See* Supp. Zimmerman Aff. and exhibits, Dkt. 55.  In addition, plaintiff has submitted sworn affidavits from plaintiff's Senior Manager Legal & Workout, Michael Zimmerman, who is familiar with the relevant facts and lease agreements based on his review of plaintiff's records.  *See* Dkts. 47-1, 55.  Based on this Court's review of the documents submitted, the Court has verified that plaintiff's calculations appear correct.  Defendants have not opposed plaintiff's motion or otherwise presented any evidence disputing the amount of damages sought by plaintiff.  The detailed accounting of the amounts owed to plaintiff, in light of defendants' failure to oppose the motion, provides a sufficient basis for the Court to determine damages.  *See Lagemann v. Spence*, No. 18-CV-12218, 2020 WL 5754800, at *13 (S.D.N.Y. May 18, 2020) ("These detailed accountings, in conjunction with Spence's refusal to oppose this motion, or answer questions at his deposition concerning damages, or otherwise answer the claims of this lawsuit, demonstrate that there is no genuine issue of material fact as to Plaintiffs' calculations."), *report and recommendation adopted*, 2020 WL 7384009 (S.D.N.Y. Dec. 16, 2020); *see De Lage Landen Fin. Servs., Inc., v. Univ. Wilde, Inc.*, No. 19-CV-1371, 2019 WL 4195441, at *4 (S.D.N.Y. Aug. 15, 2019) (on default judgment, relying on affidavit *in lieu* of hearing to award damages for breach of equipment lease agreements), *report and recommendation adopted*, 2019 WL 4194574 (S.D.N.Y. Sept. 3, 2019); *Xerox Corp. v. Everest Bus. Servs. LLC*, 972 F. Supp. 2d 462, 464 (W.D.N.Y. Sept. 24, 2013) (same); *Imaging Fin. Servs., Inc. v. Digital Page, LLC*, No. 11-CV-641, 2012 WL 913257, at *2 (N.D.N.Y. Mar. 16, 2012) (same).

Thus, the Court recommends awarding plaintiff damages for breach of contract as follows:[6]

---

[6] While the amount sought for individual schedules exceeds the amount sought in the Complaint in some instances, plaintiff's overall request for damages is less than that demanded in the Complaint.  *See* Fed. R. Civ. P. 54(c) ("A

**(a) $4,446,422.79** against defendants Ambulatory, Anand, Daan and Arizona Surgery,

jointly and severally, in connection with the Ambulatory Master Lease;

**(b) $1,336,958.57** against Desert, Anand and Arizona Partners, jointly and severally, in

connection with the Desert Master Lease; and

**(c) $4,243,189.12** against Apricus and Anand, jointly and severally, in connection with the

Apricus Master Lease.

**H.    Interest**

Plaintiff also seeks pre-judgment interest on the unpaid principal owed, in the amount of 18

percent per year, in accordance with the provisions of each master lease agreement. *See* Supp.

Zimmerman Aff. ¶¶ 54-56; *see, e.g.*, Ambulatory Master Lease Agreement ¶ 11, Dkt. 1-1 ("interest

on all monies due Us at the rate of eighteen percent (18 percent) per annum from the date of default

until paid"). Plaintiff calculates interest from the date of the filing of the Complaint, February 28,

2023 through the filing of its supplemental materials in support of its motion for default judgment

(*i.e.*, February 14, 2025). *See* Supp. Zimmerman Aff. ¶¶ 54-56.[7]

In diversity cases, New York law governs the award of pre-judgment interest. *See*

*Terwilliger v. Terwilliger*, 206 F.3d 240, 249 (2d Cir. 2000). New York law entitles prevailing

plaintiffs to prejudgment interest on any sum awarded for breach of contract, "computed from the

earliest ascertainable date the cause of action existed." *Marfia v. T.C. Ziraat Bankasi*, 147 F.3d 83,

90 (2d Cir. 1998) (quoting N.Y. C.P.L.R. 5001(b)). Where the parties stipulate to an interest rate,

"prejudgment interest is calculated at the contract rate, until the amount owed under the contract

merges into a judgment." *Bank of Am., N.A. v. Brooklyn Carpet Exch., Inc.*, No. 15-CV-5981, 2016

---

default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings.").

[7] Plaintiff initially sought interest from the "date of default through the date of filing of its [default motion (*i.e.*, from March 1, 2022 through October 25, 2024 or *969* days)]." Dkt. 47-14 at ECF pages 16-18. As set forth in Zimmerman's supplemental affidavit, however, plaintiff now seeks interest for a period of *717* days from the date the Complaint was filed (*i.e.*, February 28, 2023) through February 14, 2025. *See* Supp. Zimmerman Aff. ¶¶ 54-56.

WL 8674686, at *5 (S.D.N.Y. May 13, 2016), *report and recommendation adopted*, 2016 WL 2566237 (S.D.N.Y. June 27, 2016).

Here, each master lease agreement provides for a default interest rate of 18 percent.[8]  Even though plaintiff could have sought pre-judgment interest up until the time the Court entered judgment against defendants, the Court adopts plaintiff's request for pre-judgment interest for the limited time period between the filing of the Complaint (*i.e.*, February 28, 2023) up until the time plaintiff supplemented its motion for default judgment (*i.e.*, February 14, 2025).  Thus, the Court recommends awarding pre-judgment interest as follows:

(a) on the unpaid principal balance of $4,446,422.79 against defendants Ambulatory, Anand, Daan and Arizona Surgery (the Ambulatory Master Lease), interest in the amount of **$1,572,206.37**[9] for the period February 28, 2023 through February 14, 2025 (Supp. Zimmerman Aff. ¶ 54);

(b) on the unpaid principal balance of $1,336,958.57 against Desert, Anand and Arizona Partners (the Desert Master Lease), interest in the amount of **$472,733.90**[10] for the period February 28, 2023 through February 14, 2025 (Supp. Zimmerman Aff. ¶ 55); and

(c) on the unpaid principal balance of $4,243,189.12 against Apricus and Anand (the Apricus Master Lease), interest in the amount of **$1,500,345.17**[11] for the period February 28, 2023 through February 14, 2025 (Supp. Zimmerman Aff. ¶ 56).

## I.    Post-Judgment Interest

Plaintiff is also entitled to post-judgment interest under 28 U.S.C. § 1961(a).  Post-judgment

---

[8] "[B]ecause a lease does not constitute a loan or forbearance of money, it does not fall within the definition of usury." *Orix Credit Alliance, Inc. v. Northeastern Tech Excavating Corp.*, 634 N.Y.S.2d 841, 842-43 (3d Dep't 1995).

[9] $4,446,422.79 x 18 percent = $800,356.10 per year / 365 days = $2,192.76 per day x 717 days = $1,572,206.37.  *See, e.g.,* Dkt. 47-14 at ECF page 16; Supp. Zimmerman Aff. ¶ 54.

[10] $1,336,958.57 x 18 percent = $240,652.54 per year / 365 days = $659.32 per day x 717 days = $472,733.90.  *See, e.g.,* Dkt. 47-14 at ECF page 17; Supp. Zimmerman Aff. ¶ 55.

[11] $4,243,189.12 x 18 percent = $763,774.04 per year / 365 days = $2,092.53 per day x 717 days = $1,500,345.17.  *See, e.g.,* Dkt. 47-14 at ECF page 18; Supp. Zimmerman Aff. ¶ 56.

interest is calculated "from the date of the entry of the judgment at [the federal] rate equal to the weekly average 1-year constant maturity Treasury yield . . . for the calendar week preceding the date of judgment." *Id.* (typographical error and explanatory footnote omitted). Such awards are "mandatory" under section 1961. *See Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96, 100 (2d Cir. 2004). Accordingly, the Court recommends that Plaintiff be awarded post-judgment interest on all sums awarded, to accrue from the entry of judgment until the date of payment.

### J.    Attorneys' Fees and Costs

Plaintiff further requests $58,140.50 in attorneys' fees and $6,523.78 in costs, pursuant to the terms of the master lease agreements and guaranties. *See* Declaration of Clifford A. Katz ("Katz Decl.") ¶ 42, Dkt. 47-5; Supplemental Declaration of Clifford A. Katz ("Supp. Katz Decl.") ¶ 4, Dkt. 56.

"In a diversity case, the question of whether to award attorneys' fees is governed by state law." *Precise Leads, Inc. v. Nat'l Brokers of Am., Inc.*, No. 18-CV-8661, 2020 WL 736918, at *6 (S.D.N.Y. Jan. 21, 2020), *report and recommendation adopted as modified*, 2020 WL 729764 (S.D.N.Y. Feb. 13, 2020). "Under New York law, a contract that provides for an award of reasonable attorneys' fees to the prevailing party in an action to enforce the contract is enforceable if the contractual language is sufficiently clear." *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008). If the contract so provides, the "court will order the losing party to pay whatever amounts have been expended by the prevailing party, so long as those amounts are not unreasonable." *F.H. Krear & Co. v. Nineteen Named Trs.*, 810 F.2d 1250, 1263 (2d Cir. 1987); *see Carco Grp., Inc. v. Maconachy*, 718 F.3d 72, 86 (2d Cir. 2013) ("the touchstone for an award of attorneys' fees pursuant to a contract is reasonableness"). "[A]ttorneys' fees must be documented by contemporaneously created time records that specify, for each [timekeeper], the date, the hours expended, and the nature of the work done." *NextGear*, 2025 WL 897565, at *10 (internal

quotation marks and citation omitted).

Here, the master lease agreements and guaranties contain specific provisions that permit plaintiff to recover attorneys' fees and other legal expenses from defendants. *See, e.g.*, Ambulatory Master Lease Agreement ¶ 11 ("You agree to pay all costs incurred by Us in connection with enforcing Our rights against You, including attorneys' fees."); Guaranty ¶ 8.1 ("Guarantor shall be liable for all costs, charges and expenses including reasonable attorneys' fees and disbursement incurred by Lessor by reason of the occurrence of an Event of Default[.]").

Nevertheless, "the Court must assess whether the fees claimed are reasonable." *56 Willoughby A LLC v. Zhang*, No. 20-CV-3973, 2021 WL 3622084, at *9 (E.D.N.Y. July 27, 2021) (citation omitted), *report and recommendation adopted*, 2021 WL 3617671 (E.D.N.Y. Aug. 16, 2021); *see Carco*, 718 F.3d at 86. "[T]he Supreme Court and Second Circuit have held that 'the lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case – creates a presumptively reasonable fee.'" *Garcia-Severino v. TDL Restoration, Inc.*, No. 18-CV-11401, 2020 WL 7239678, at *1 (S.D.N.Y. Dec. 9, 2020) (quoting *Millea v. Metro-North R.R.*, 658 F.3d 154, 166 (2d Cir. 2011)). This presumptively reasonable fee or lodestar is essentially "'what a reasonable, paying client would be willing to pay,' given that such party wishes 'to spend the minimum necessary to litigate the case effectively.'" *Simmons v. NYC Transit Auth.*, 575 F.3d 170, 174-75 (2d Cir. 2009) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)). In particular, when assessing an attorney's requested hourly rate, courts typically consider other rates awarded in the district where the reviewing court sits. *See Simmons*, 575 F.3d at 174-75; *Arbor Hill*, 522 F.3d at 191.

Other factors include the labor and skill required, the difficulty of the issues, the attorney's customary rate, the experience, reputation and ability of the attorney, and awards in similar cases. *See Arbor Hill*, 522 F.3d at 191. District courts have broad discretion in determining the

reasonableness of an attorney's requested fees.  *See Chocolatl v. Rendezvous Cafe, Inc.*, No. 18-CV-3372, 2019 WL 5694104, at *14 (E.D.N.Y. Aug. 16, 2019), *report and recommendation adopted*, 2020 WL 1270891 (E.D.N.Y. Mar. 17, 2020).  This standard applies not only to cases involving statutory fee-shifting, but also to those in which fees are authorized by contract.  *See, e.g., 56 Willoughby A LLC*, 2021 WL 3622084, at *9 (employing *Arbor Hill* analysis); *RJ Kitchen Assocs. Inc. v. Skalski*, No. 16-CV-1436, 2019 WL 2436092, at *7 (E.D.N.Y. Feb. 25, 2019) (same).

Plaintiff seeks a fee award based on a blended hourly rate of $284.58 per hour for all attorney and paralegal time.  *See* Supp. Katz Decl. ¶ 4, Dkt. 56.  Generally, blended rates are disfavored in attorneys' fee applications because more junior attorneys may be billed at much higher rates than would otherwise be appropriate for such attorneys' experience under the prevailing rates in this district.  *See Tr. of Leather Goods, Handbags, & Novelty Workers' Union Loc. 1 Joint Ret. Fund v. Cent. Fur Storage Co.*, No. 18-CV-7224, 2019 WL 3937132, at *11 (E.D.N.Y. Aug. 2, 2019) (noting "use of a 'blended rate' is at odds with the 'presumptively reasonable fee' framework"), *report and recommendation adopted*, 2019 WL 3936676 (E.D.N.Y. Aug. 20, 2019).   However, some courts in this Circuit have awarded attorney's fees based on blended rates given the circumstances of the particular case.  *See, e.g., United Realty Advisors, LP v. Verschleiser*, No. 14-CV-5903, 2023 WL 4141545, at *12 (S.D.N.Y. June 23, 2023); *Toribio v. Abreu*, No. 18-CV-1827, 2018 WL 6363925, at *8-9 (E.D.N.Y. Nov. 15, 2018), *report and recommendation adopted*, 2018 WL 6335779 (E.D.N.Y. Dec. 4, 2018); *Trs. of the Rd. Carriers Loc. 707 Pension Fund v. J.R.S. Trucking Servs., Inc.*, No. 15-CV-2444, 2015 WL 10487716, at *9 (E.D.N.Y. Nov. 10, 2015), *report and recommendation adopted*, 2016 WL 1064518 (E.D.N.Y. Mar. 15, 2016).

For example, in *United Realty Advisors, LP v. Verschleiser*, the court approved a blended

rate of $450 for the work of eight partners, one senior attorney, and three associates, where the "available time records show[ed] that partners performed a clear majority of the legal work" and the rate was lower than the reasonable rate "many of these experienced partners otherwise could have charged." 2023 WL 4141545, at *12.

Similarly, here, the Court concludes that plaintiff's use of a blended rate of $284.58 per hour is reasonable. For 2023 and 2024, counsel charged plaintiff a discounted rate of $275 per hour and $300 per hour, respectively, for all attorneys, and $275 per hour for paralegals. *See* Supp. Katz Decl. ¶ 5. In this case, partners performed approximately 90 percent of the work completed. In fact, Clifford Katz, a named partner of the Platzer Firm, whose most recent regular hourly rate is $700 per hour, billed 172.5 hours of the total 203.8 hours[12] spent on this case. *See id.* ¶ 4. In contrast, the paralegal, who regularly charges $275 per hour, billed only .5 hours, and the junior associates, who regularly bill at approximately $300 per hour, spent a small fraction of the total time worked. *See id.* Thus, on balance, the blended rate of $284.58 is more than reasonable under the circumstances.

Next, this Court must determine that the hours billed were also reasonable. Courts award fees only for hours that are "reasonably expended." *Hensley v. Eckerhart*, 461 U.S. 424, 430, 433 (1983). "When considering an application for attorneys' fees, the Court should exclude 'excessive, redundant, or otherwise unnecessary hours.'" *Dominic Schindler Holding, AG v. Moore*, No. 20-CV-4407, 2022 WL 987428, at *9 (E.D.N.Y. Jan. 12, 2022) (quoting *Hensley*, 461 U.S. at 434). "[I]n dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed 'as a practical means of trimming fat from a fee application[.]'" *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (citation omitted); *see H.C. v. New York City Dep't of Educ.*, 71 F.4th 120, 126 (2d Cir.), *cert. denied*, 144 S. Ct. 490

---

[12] Although plaintiff calculated the 204.3 total hours spent, based on this Court's review of the billing records submitted, the correct total is 203.8 hours.

(2023); *Raja v. Burns*, 43 F.4th 80, 87 (2d Cir. 2022); *Ortiz v. City of N.Y.*, 843 F. App'x 355, 360 (2d Cir. 2021).

Plaintiff seeks attorneys' fees for 203.8 hours. Counsel has submitted time records setting forth each timekeeper's name, as well as the dates, descriptions, and number of hours of work performed. Based on a review of the billing records submitted, the Court finds the number of hours expended to be excessive. First, the Court notes that counsel spent a substantial amount of time in connection with the sale of equipment to mitigate plaintiff's losses as a result of defendants' default. That work was directly related to enforcement of plaintiff's rights under the master lease agreements and resulted in a substantial credit towards defendants' liability. *See* Katz Decl. ¶ 41, Dkt. 47-5. However, a fee reduction is necessary because the overall number of hours that counsel devoted to this litigation is excessive in light of the straightforward nature of this action. *See Abularach v. High Wing Aviation LLC*, No. 22-CV-1266, 2025 WL 405986 (E.D.N.Y. Feb. 5, 2025) (finding 54 hours excessive in breach of contract action); *Bank of Am.*, 2016 WL 8674686, at *10 (collecting cases concerning reasonable number of hours expended in actions for breach of contract in which defendant defaulted and finding acceptable range of 13.3 hours to 20.6 hours). To be sure, the lengthy and laborious nature of this litigation is due in large part to the actions of the defaulting defendants, spanning over two years. However, to cite one example, counsel billed approximately 11.7 hours in connection with an anticipated motion for injunctive relief, which was never filed. *See* Dkt. 56-1 at ECF pages 11-13. Counsel spent almost 26 hours drafting the instant motion for default judgment, an excessive amount of time in light of the work completed. *See id.* at ECF pages 29, 49-53. In another example, counsel billed 1.9 hours for drafting a short letter-motion for an extension of time to serve defendants. *Id.* at ECF page 21. Overall, counsel's billing records also contain several entries that reflect time spent on administrative work for which counsel would not generally be entitled to attorney rates. *See, e.g.*, Dkt. 56-1 at ECF pages 27 ("Review

information from Process Server of service on defendants"; "Review Affidavit of Service and file same"); 37 ("Review file Affidavit of Service of Scheduling Order"); 41 ("Review file required Affidavit of Service on minute order on status conf."); 47 ("File Affidavit of Service for settlement docs"); 57 ("Review legal docket and Affidavit of Service and file Affidavit of Service").  These tasks could have been completed by legal support staff.  *See Tenecora v. Ba-kal Rest. Corp.*, No. 18-CV-7311, 2020 WL 8771256, at *31-32 (E.D.N.Y. Nov. 30, 2020) (applying percentage reduction to account "for time spent on administrative or non-compensable work, including clerical tasks, such as electronic filing, scanning, organizing files, communicating with process servers, and printing documents"), *report and recommendation adopted in part*, 2021 WL 424364 (E.D.N.Y. Feb. 8, 2021); *see also Cruz v. JJ's Asian Fusion Inc.*, No. 20-CV-5120, 2022 WL 687097, at *11 (E.D.N.Y. Jan. 11, 2022) (reducing hours for partner by 50 percent where partner billed for reviewing court notices, filed affidavits, filed notices, and performed other ministerial tasks), *report and recommendation adopted*, 2022 WL 577954 (E.D.N.Y. Feb. 25, 2022).

Here, a modest percentage reduction is appropriate given the inefficient use of counsel's time described above.  Thus, the Court recommends an across-the-board reduction of 20 percent of plaintiff's requested fees.  *See Zabrodin v. Silk 222, Inc.*, 702 F. Supp. 3d 102, 125 (E.D.N.Y. 2023) (deducting 10 percent from requested attorneys' fees because it "was unreasonable that counsel could not litigate case more efficiently"); *Lamaka v. Russian Desserts Inc.*, No. 18-CV-7354, 2021 WL 2188280, at *16 (E.D.N.Y. Feb. 12, 2021) (reducing attorneys' fee award by 20 percent to account for duplicative work as well as billing for "work that could reasonably have been performed by a paralegal professional or administrative assistant"), *report & recommendation adopted*, 2021 WL 2184870 (E.D.N.Y. May 28, 2021); *Filo Promotions, Inc. v. Bathtub Gins, Inc.*, 311 F. Supp. 3d 645, 652 (S.D.N.Y. 2018) (reducing by two-thirds the requested amount of attorneys' fees because of "the relative lack of complexity of the legal issues involved"); *HTV*

*Indus., Inc. v. Agarwal*, 317 F. Supp. 3d 707, 725 (S.D.N.Y. 2018) (reducing requested attorney's fees by 25 percent due to the straightforward nature of the claims).

Accordingly, based on the blended rate recommended above, the hours billed on this matter, and the recommended 20 percent across-the-board fee reduction, the Court recommends awarding plaintiff **$46,397.92** ($284.58 x 203.8 hours - 20 percent) in attorneys' fees.

In addition to attorneys' fees, plaintiff seeks to recover $6,523.78 in costs. *See* Katz Decl. ¶ 42. As noted above, the master lease agreements and guaranties permit plaintiff to recover costs incurred in connection with this matter. In addition, as a prevailing party, plaintiff is also entitled to recovery of costs approved by the Clerk of the Court. *See* Fed. R. Civ. P. 54(d)(1) ("Unless a federal statute, these rules, or a court order provides otherwise, costs – other than attorney's fees – should be allowed to the prevailing party").

"An award of costs 'normally includes those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients.'" *Quintanilla v. Pete's Arbor Care Servs., Inc.*, No. 19-CV-6894, 2024 WL 3675900, at *3 (E.D.N.Y. Aug. 6, 2024) (quoting *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020)). "For example, fees incurred for court filing, process servers, printing, photocopying, messenger services, postage , telephone services, transcripts, transportation, meals, subpoenas, witness fees, deposition services, and transcripts are recoverable." *Id.* Parties must provide "adequate" documentation to support an award of reasonable costs. *Precise Leads*, 2020 WL 736918, at *8.

Here, the costs requested largely consist of service of process fees in the amount of $5,845.45. *See* Katz Aff. ¶ 42. In addition, plaintiff seeks to recover $678.33 for delivery and FedEx charges incurred from sending multiple notices to defendants in this action and in connection with the Article 9 UCC sales. *Id.*

The Court finds that these costs are properly recoverable. *See Freedom Mortg. Corp. v.*

24

*Trejo*, No. 22-CV-7116, 2024 WL 3465241, at *16 (E.D.N.Y. July 19, 2024) (awarding filing fees, service of process fees, and skip traces); *Bank of Am., N.A. v. Jacobi Tool & Die M.F.G., Inc.*, No. 17-CV-6828, 2019 WL 7599891, at *6 (E.D.N.Y. Oct. 22, 2019) (awarding courier delivery fees). This Court, therefore, recommends awarding plaintiff **$6,523.78** in costs.

### Conclusion

For the foregoing reasons, the Court respectfully recommends striking the answers of defendants Kishlay Anand and Daan Investment Services LLLP.  Further, the Court recommends granting the motion for default judgment filed on behalf of plaintiff Canon Financial Services, Inc. against defendants Ambulatory Surgery Centers LLC, Kishlay Anand, Daan Investment Services LLLP, Arizona Surgery Partners, LLC, Desert Mirage Surgery Center, LLC, Arizona Surgical Partners LLC and Arizona Imaging Center, LLC d/b/a Apricus Imaging Center as follows:

(a) **$4,446,422.79** against defendants Ambulatory Surgery Centers LLC, Kishlay Anand, Daan Investment Services LLLP and Arizona Surgery Partners, LLC, jointly and severally, in connection with the Ambulatory Master Lease, plus interest in the amount of **$1,572,206.37**;

(b) **$1,336,958.57** against Desert Mirage Surgery Center, LLC, Kishlay Anand and Arizona Partners LLC, jointly and severally, in connection with the Desert Master Lease, plus interest in the amount of **$472,733.90**; and

(c) **$4,243,189.12** against Arizona Imaging Center, LLC d/b/a Apricus Imaging Center and Kishlay Anand, jointly and severally, in connection with the Apricus Master Lease, plus interest in the amount of **$1,500,345.17**.

The Court also recommends granting plaintiff's request for post-judgment interest.

Finally, the Court recommends awarding plaintiff **$46,397.92** in attorneys' fees and **$6,523.78** in costs, against all defendants jointly and severally.

Any objections to the recommendations made in this Report must be filed with the

Honorable Pamela K. Chen within 14 days after the filing of this Report and Recommendation and, in any event, on or before **September 19, 2025**.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  Failure to file timely objections may waive the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam) (discussing waiver under the former ten-day limit).

A copy of this Report and Recommendation is being electronically served on counsel. Further, the Court directs plaintiff's counsel to serve a copy of this Report and Recommendation by overnight mail and first-class mail on defendants and to file proof of service on ECF by **September 10, 2025**.

SO ORDERED

Dated: Brooklyn, New York
September 5, 2025

s/ James R. Cho
James R. Cho
United States Magistrate Judge